**Robert W. WAYMAN, Appellant–Plaintiff,**

v.

**J & S PETROLEUM, INC., Appellee–Defendant.**

No. 93A02–9712–EX–867.

Court of Appeals of Indiana.

May 4, 1998.

Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, for appellant-plaintiff.

Robert C. Rupp, Indianapolis, for appellee-defendant.

## OPINION

GARRARD, Judge.

Robert Wayman appeals from a decision of the Worker's Compensation Board of Indiana ("Board"). He presents one issue: whether the Board "erred as a matter of law in reversing its hearing officer's award without presenting any findings of fact or legal conclusion."

On April 10, 1992, during his employment as a fuel oil and farm delivery truck driver for J & S Petroleum ("J & S"), Wayman attempted to load a 120 pound oil barrel onto his truck. As he did so, he felt something "give way" in his left arm. When he began to feel a weakness in his left arm, Wayman reported the incident to J & S personnel. J & S contacted its worker's compensation carrier.

Eventually, Wayman saw Dr. Rick Sasso, who found that Wayman's arm problems were caused by a herniated disc between cervical vertebrae 5 and 6. Following Sasso's advice, Wayman underwent surgery in September of 1992 to remove the protruding disc and fuse the vertebrae. Sasso's notes from subsequent examinations indicate that the surgery relieved Wayman's pain and weakness in his upper back and left arm, and that the exercises Sasso recommended im-proved Wayman's strength in his left arm. On December 9, 1992, Sasso assigned Wayman a permanent partial impairment rating of 10% and permitted him to return to work without restrictions. Wayman returned to work that same day.

J & S's worker's compensation carrier agreed to pay Wayman temporary total disability benefits for the period between his September 29, 1992 surgery and his December 13, 1992 release from Sasso's care. In addition, the worker's compensation carrier agreed to pay Wayman a lump sum of $5,000 for his 10% permanent partial impairment rating.

Between January and March of 1993, Wayman began noticing a recurrence of the weakness in his left arm and claims to have notified his employer of the problem. In March of 1993, J & S was sold to a different company, for which Wayman worked until being discharged due to route consolidation. In May of 1993, Wayman saw Sasso for further diagnosis. Sasso ordered an MRI which revealed that Wayman had a herniated disc at the C3–4 level and also at the C4–5. Sasso's notes indicated that these disc herniations were not present when an initial MRI was conducted in 1992.

Gradually, Wayman lost all the strength he had recovered in his arm after surgery. On June 25, 1993, Wayman filed for adjustment of his worker's compensation claim. A hearing on the matter was held in the fall of 1996. In December of 1996, a single hearing judge issued a detailed order which stated, *inter alia:*

It is further found that:

1. [Wayman] sustained a cervical disc injury on April 10, 1992 and underwent disc fusion surgery at the C5–6 level on September 29, 1992.

2. [Wayman] applied for and received unemployment following his discharge from defendant's employ. He gained other employment sometime in March 1994 and is working presently.

3. After several months of successful rehabilitation, [Wayman] began experiencing pain and weakness in his left arm and shoulder. [Wayman] did not report these

symptoms to defendant as a separate work injury. These symptoms have persisted and worsened.

4. An MRI examination conducted at the direction of [Wayman]'s original treating physician, Dr. Rick Sasso, in May 1993, revealed two additional disc herniations at the C3–4 levels. These herniations did not appear from an MRI and other examinations conducted after [Wayman]'s injury and before his surgery. Additional fusion surgery has been recommended by Dr. Sasso.

5. Dr. Sasso's notes and records indicate his belief that [Wayman] is a cooperative and reliable patient who was making a substantial recovery before his condition worsened in March, 1993. In particular, Dr. Sasso notes increased arm strength resulting from [Wayman]'s adherence to his physical therapy regimen.

6. Neither [Wayman] [n]or defendant has identified any incident that may have caused [Wayman]'s onset of symptoms in March, 1993.

## CONCLUSIONS

The evidence presented indicates that [Wayman]'s additional disc herniations were either undiagnosed in 1992 or caused by his physical therapy or work activities. [Wayman]'s credibility and the absence of any other identifiable cause are factors supporting his claim. He is entitled to the surgery recommended by Dr. Sasso and any appropriate benefits allowed by the Worker's Compensation Act.

Said Hearing Judge now finds for [Wayman] and against defendant on [Wayman]'s Application for Adjustment of Claim filed June 25, 1993.

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Worker's Compensation Board of Indiana that defendant provide the recommended surgery and appropriate temporary total disability until terminated in accordance with the Worker's Compensation Act.

It is further ordered that all compensation payable by virtue of this award shall be paid direct to [Wayman], . . .

Record at 11–12. Following a separate hearing, the full Board issued a November 26, 1997 order which provided: "It is further found by the majority of the Judges of the Full Worker's Compensation Board that the Single Hearing Judge's decision should be reversed; that [Wayman] take nothing by her [sic] Application for Benefits filed June 25, 1993." Record at 17. Wayman appeals from this order.

■ Worker's compensation claims are heard and determined by a single member of the Board. IND.CODE § 22–3–4–6; *Rork v. Szabo Foods*, 436 N.E.2d 64, 67 (Ind.1982). This approach "effectuates a desirable and pragmatic goal in the administration of the Worker's Compensation Act—the speedy disposition of claims." *Id.; see also Cox v. Worker's Compensation Bd. of Ind.*, 675 N.E.2d 1053, 1058 (Ind.1996) ("worker's compensation acts are designed to afford injured employees an expeditious remedy independent of any negligence"). Since the initial determination is a summary proceeding, the individual hearing judge need only file an award and the record of proceedings, *Rork*, 436 N.E.2d at 67, but may file findings and conclusions.

■ If review is requested, the Board may in its discretion either look over the transcript, or conduct a full hearing *de novo*. IND.CODE § 22–3–4–7; *Schreiber v. Rickert*, 114 Ind.App. 55, 50 N.E.2d 879, 881 (1943). Whichever approach the Board chooses, it must cautiously scrutinize any statements or rationale offered by the hearing judge in the initial summary disposition of the case. *Rork*, 436 N.E.2d at 67. Assuming the appropriate scrutiny occurred, the Board is neither prohibited by statute from, nor judicially condemned for, adopting the hearing judge's decision. *Id.* Moreover, where the hearing judge's statements or findings are supported by the evidence and embody the requisite specificity, the Board should not hesitate to adopt and incorporate by reference the hearing officer's work. *Id.*

Here, however, the Board did not adopt or incorporate by reference the hearing officer's work. Rather, the Board simply reversed the single hearing judge's decision. The Board's approach was inconsistent with the Worker's Compensation Act which provides:

> If an application for review is made to the board within thirty (30) days from the date of the award made by less than all the members, the full board, if the first hearing was not held before the full board, shall review the evidence, or, if deemed advisable, hear the parties at issue, their representatives, and witnesses as soon as practicable and *shall make an award and file the same with the finding of the facts on which it is based* and send a copy thereof to each of the parties in dispute, in like manner as specified in section 6 of this chapter.

IND.CODE § 22–3–4–7 (emphasis added). "An administrative agency must in all cases set out written findings of fact in support of its decision so that an appellate court may intelligently review the decision without speculating as to the agency's rationale." *Jackson v. Cigna/Ford Electronics and Refrig. Corp.*, 677 N.E.2d 1098, 1102 (Ind.Ct.App. 1997) (citing *Talas v. Correct Piping Co.*, 275 Ind. 261, 416 N.E.2d 845, 846 (1981) and *Perez v. United States Steel Corp.*, 426 N.E.2d 29, 31 (Ind.1981)). "It is the Full Industrial Board's opinion which the legislature has required; the requirement that the seven members of the Board enumerate their findings of fact is a prophylactic measure against arbitrary or hastily drawn decisions[.]" *Rork*, 436 N.E.2d at 67.

Here, we need not address the sufficiency of the Board's findings as the Board made none. The Board merely stated that Wayman would "take nothing." By disposing of the present case in such an abbreviated manner, the Board thwarted the goals of expeditious and effective review of Board determinations and protection against careless or arbitrary administrative action. *See Perez*, 426 N.E.2d at 32. Faced with no way to review the Board's determination as presently written, we reverse the full Board's decision and remand with instructions to enter specific findings of fact upon which the award was based.

Reversed and remanded.

SHARPNACK and FRIEDLANDER, JJ., concur.