**Robert W. WAYMAN, Appellant–Plaintiff,**

v.

**J & S PETROLEUM, INC., Appellee–Defendant.**

No. 93A02–9810–EX–803.

Court of Appeals of Indiana.

March 11, 1999.

Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, Indiana, Attorney for Appellant.

Robert C. Rupp, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant Robert Wayman (Wayman) appeals from the ruling of the Full Worker's Compensation Board which denied him compensation benefits following his 1992 work related injury. Wayman was injured while acting within the scope of his employment with Defendant–Appellee J & S Petroleum, Inc. (J & S).

We reverse and remand for rehearing and further findings.

### ISSUE

Wayman presents two issues for our review which we consolidate as follows: Whether the Full Worker's Compensation Board entered findings sufficient to comply with this court's previous mandate and whether those findings are sufficient to enable effective review of the issues.

### FACTS AND PROCEDURAL HISTORY

This is the second time this cause has been appealed. In April of 1992, Wayman was injured on the job during his employment as a fuel and farm delivery truck driver for J & S Petroleum. As Wayman was loading a 120 pound barrel onto his truck, he felt something "give way" in his left arm. Wayman notified his employer, and his employer contacted its worker's compensation insurance carrier.

Wayman was referred to Dr. Rick Sasso and was diagnosed with a herniated disc between cervical vertebrae 5 and 6. Based upon Dr. Sasso's recommendation, Wayman underwent surgery in September of 1992. The protruding disc was removed, and the vertebrae were fused. By agreement, Wayman received temporary total disability benefits from J & S beginning on September 29, 1992, and continuing until December 13, 1992. Wayman was released from medical care in December of 1992, and he returned to work at that time.

The parties also entered into a supplemental compensation agreement whereby Wayman received a lump sum payment of $5,000 from J & S. This compensation was based upon Dr. Sasso's assessment of Wayman's impairment level as "whole person permanent partial impairment." Wayman accepted this lump sum payment and continued working for J & S without restrictions until March of 1993, when J & S sold its business to Farm Bureau Co-op. Wayman was subsequently discharged by Farm Bureau due to the elimination of his truck route.

After several months of successful rehabilitation, Wayman began experiencing pain and weakness in his left arm and shoulder. There is disagreement among the parties as to whether Wayman reported these new symptoms to his employer. In May of 1993, Wayman saw Dr. Sasso for further diagnosis and treatment. Upon Dr. Sasso's advice, Wayman underwent an MRI. The test revealed two additional herniated discs at cervical vertebrae 3 and 4. Dr. Sasso's notes indicate that these new disc herniations were not present at the time of the initial MRI in 1992.

After eventually losing all strength in his arm, Wayman filed for adjustment of his worker's compensation claim in June of 1993. A hearing was held before a single hearing judge in December of 1996. The hearing judge issued findings of fact and concluded in Wayman's favor as follows:

> The evidence presented here indicates that plaintiff's additional disk herniations were either undiagnosed in 1992 or caused by his physical therapy or work activities. Plaintiff's credibility and the absence of any other identifiable cause are factors supporting his claim. He is entitled to the surgery recommended by Dr. Sasso and any appropriate benefits allowed by the Worker's Compensation Act.
>
> Said hearing judge now finds for the plaintiff and against the defendant on plaintiff's Application for Adjustment of Claim filed June 25, 1993.

(Record, 11).[1] The hearing judge's award in favor of Wayman stated that Wayman was entitled to receive the recommended surgery and appropriate temporary total disability until terminated in accordance with the Indiana Worker's Compensation Act.

On January 2, 1997, J & S filed an Application for Review by the Full Worker's Compensation Board. A hearing was held before the Full Board in October of 1997, and the award in favor of Wayman was reversed. Specifically, the one-page order stated in cursory fashion that the "Single Hearing Judge's decision should be reversed; [and] that plaintiff take nothing by her (sic) Application for Benefits filed June 25, 1993." (Record, 17). Wayman appealed to this court, and on May 4, 1998, we issued an opinion reversing and remanding the case to the Full Board with instructions for the Board to "enter specific findings of fact upon which the award is based." *Wayman v. J & S Petroleum,* 694 N.E.2d 767, 770 (Ind.Ct. App.1998).

On September 14, 1998, the Full Board issued an order generally summarizing the facts and procedural history of the case. The Board added a few short paragraphs with regard to Wayman's new injury and then re-affirmed its order reversing the decision of the single hearing judge. In sum, the Board held that "the Plaintiff shall take nothing by his Application for Adjustment of Claim filed June 25, 1993." (Post–Remand Record, 16). Wayman appeals from this award.

## DISCUSSION AND DECISION

Wayman contends that the Full Board's decision continues to lack the requisite specificity to comply with this court's previous mandate or to enable meaningful appellate review. We agree. Ind.Code § 22–3–4–7 provides as follows:

> If an application for review is made to the board within thirty (30) days from the date of the award made by less than all the members, the full board, if the first hear-

1. On November 5, 1998, this court entered an order directing the Clerk of the Court of Appeals to transfer the Record of the Proceedings from the prior appeal between the parties to this cause and make it a part of the record in this cause. For the sake of clarity, we will refer to citations to the original record as (Record), and the record for the current appeal as (Post–Remand Record).

ing was not held before the full board, shall review the evidence, or, if deemed advisable, hear the parties at issue, their representatives, and witnesses as soon as practicable and shall make an award and file the same with the finding of facts on which it is based and send a copy thereof to each of the parties in dispute, in like manner as specified in section 6 of this chapter.

This court and the Indiana Supreme Court has repeatedly held that "[a]n administrative agency must in all cases set out written findings of fact in support of its decision so that an appellate court may intelligently review the decision without speculating as to the agency's rationale." *Jackson v. Cigna/Ford Electronics and Refrigeration Corp.*, 677 N.E.2d 1098, 1102 (Ind.Ct.App. 1997); *Perez v. United States Steel Corp.*, 426 N.E.2d 29, 31 (Ind.1981); *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 31–32 (Ind.Ct. App.1993). In *K–Mart*, we succinctly stated that our insistence on compliance with the specific findings requirement "is not predicated on esoteric legal technicalities or the rote imposition of statutory provisions." *K–Mart*, 609 N.E.2d at 31–32. Rather, we said that "specific findings of fact are essential to an effective system of administrative law." *Id.*

Here, the Full Board's order did not identify the particular issue or issues on which it based its reversal of the single hearing judge's award. With regard to Wayman's new injury, the Board stated only the following:

After several months of successful rehabilitation, Plaintiff began experiencing pain and weakness in his left arm and shoulder. Plaintiff did not report these symptoms to defendant as a separate work injury. These symptoms have persisted and worsened.

An MRI examination conducted at the discretion of plaintiff's original treating physician, Dr. Rick Sasso, in May 1993, revealed two additional disc herniations at the C3–4 levels. These herniations did not appear from an MRI and other examinations conducted after plaintiff's injury and before his surgery. Additional fusion surgery has been recommended by Dr. Sasso.

Dr. Sasso's notes and records indicate his belief that plaintiff is a cooperative and reliable patient who was making a substantial recovery before his condition worsened in March 1993. In particular, Dr. Sasso notes increased arm strength resulting from his patient's adherence to his physical therapy regimen.

Neither plaintiff or defendant has identified any incident that may have caused plaintiff's onset of symptoms in March 1993.

Based on the credible medical evidence of Rick C. Sasso, M.D., as set forth in his report of May 4, 1993, there is reasonable medical certainty that the accident in question is not causally related to the injury complained of in this petition for modification.

(Post–Remand Record, 15–16). The Full Board merely recites the facts as found by the single hearing judge, and adds nothing to aid us in determining its rationale for reversal. While the Board alludes to a medical report issued by Dr. Sasso, this mere reference does little to aid us is identifying an evidentiary basis for the Board's ultimate decision. Dr. Sasso's progress note of May 4, 1993, summarizes Wayman's post-operative progress and reports that Wayman's pain was gone and the strength in his biceps was improving. Dr. Sasso went on to explain that Wayman was doing quite well until approximately two weeks prior to May, 1993, when he began experiencing additional pain. Specifically, Dr. Sasso stated as follows:

[Wayman] began noticing increasing weakness in his left biceps. He has also had some pain in his posterior cervical region and left trapezial region.

Physical exam today demonstrates extremely well healed anterior incision. The left biceps appears to be less atrophic than when I last saw him, however, muscle strength is approx. 3 out of 5. It is improved from preoperatively, however, according to Mr. Wayman, this is weaker than what it has been over the past few months.

X-rays today demonstrate no change in position of the allograft [used to fuse the vertebrae]. Allograft remains in good position. It is well healed to the inferior endplate, however, a lucent line is present superiorly.

Assessment and plan: I am unsure as to why Mr. Wayman may be having increasing weakness in the left biceps. I find no evidence of change in position of the allograft. His neck pain may be secondary to a pseudarthrosis at this level, however, I am most concerned about his possible neurologic change. I have recommended an MRI scan in order to definitively document the neural structures, most specifically, the left C6 nerve root. I plan to see him back in my office after this has been performed. Until that time, I wish for him to continue with his regular job without artificial restrictions as he presently is performing.

(Record, 44). We note that this progress report was written prior to Wayman undergoing the MRI which aided in the diagnosis of his herniated disc at cervical vertebrae 3 and 4.

Given the perfunctory findings issued by the Full Board, we remand this case yet again with instructions for the Full Board to rehear this case and issue specific findings of fact upon which the award is based. We do this to prevent the likely possibility of repeated appeals.

Reversed and remanded.

STATON, J., and BROOK, J., concur.