**Carlos WICKER, Appellant–Plaintiff,**

**v.**

**COMMUNITY MEDIA GROUP d/b/a Rensselaer Republican, Appellee–Defendant.**

**No. 93A02–9904–EX–00296.**

Court of Appeals of Indiana.

Oct. 12, 1999.

---

Terry R. Boesch, Susan Kozlowski, David T. Szumski, Terry R. Boesch, Attorney, P.C., Valparaiso, Indiana, Attorneys for Appellant.

Julia Blackwell Gelinas, Bruce J. Alvarado, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-plaintiff Carlos Wicker appeals from the Full Worker's Compensation Board's (the Board) reversal of the Single Hearing Member's award of temporary total disability payments and medical expenses against Wicker's employer, Community Media Group d/b/a Rensselaer Republican (Republican). Specifically, Wicker contends that the reversal is unsupported by substantial evidence. In the alternative, he argues that the Board erred as a matter of law when it reversed without presenting findings of fact.

### FACTS

The facts most favorable to the Board's decision reveal that although Wicker alleges that he was injured while moving a large roll of paper during his work at the newspaper's printing press on Friday, April 25, 1997, he did not report such injury to his supervisor until several days later after he went to the emergency room. Wicker did not go to the emergency room until approximately 2:00 a.m. on the following Monday. There, he reported no trauma and explained that when he went to sit on the bed earlier that evening, he had a sudden onset of pain in his left hip. R. at 84. The medical record from Wicker's visit to the emergency room further notes that he had a similar episode in December, which was resolved without medical attention, and has a history of Perthes' disease in his left hip. R. at 84. Further, the x-ray report explains that the x-ray findings "indicate chronic stage of Legg–Perthes' Disease with incomplete lateral subluxation of the left hip joint." R. at 75. In a letter to Dr. Ahler, dated April 29, 1997, Dr. Tom Gripe recounted Wicker's "long

history of continuous pain" and his diagnosis of Perthes' disease nine years earlier which resulted in surgery. R. at 67. Dr. Gripe then opined that Wicker was now suffering from end stage left hip disease due to Perthes' nine years ago. R. at 67. Wicker's prior medical records indicate that he was diagnosed with Perthes' disease in 1987, and, in one report, his prognosis was described as dim. R. at 69–70, 77, 81.

Wicker filed an Application for Adjustment of Claim on September 22, 1997, alleging that he had injured his left hip at work on April 25, 1997. We note that on the application, Wicker stated that his employer was not notified of his alleged injury until April 28. R. at 4. Republican denied his claim for worker's compensation benefits on the ground that Wicker had a preexisting injury to his hip.

A hearing was held before a Single Hearing Member on March 17, 1998. The parties stipulated to the following facts: (1) Wicker was employed by Republican on November 25, 1996 through April 25, 1997; (2) Wicker was employed at an average weekly wage of $193.00; and, (3) Wicker is alleging injury on April 25, 1997.[1] Record at 61. The parties further stipulated that the only issue was whether the injuries Wicker suffered arose out of the scope and course of his employment with Republican. R. at 61. Finally, the parties stipulated that the evidence included medical records of Dr. Kenneth J. Ahler. R. at 61, 64–92. Following the admission into evidence of these stipulations, including the medical records, the parties proceeded to introduce witness testimony. Wicker, his girlfriend and his mother testified on his behalf. Wicker's supervisor on the night in question and Republican's Regional Business Manager testified for Republican. Thereafter, the Single Hearing Member awarded medical expenses and temporary total disability payments to Wicker. Specifically, the Single Hearing Member made the following findings of fact and conclusions of law:

Said Hearing Judge, having heard all the evidence in said cause, the stipulation of the parties, and having reviewed the entire file and being duly advised in the premises therein, now adopts the stipulation as the Board's findings.

1. It is further found that the plaintiff was injured in the course and scope of his employment with the defendant on April 25, 1997.

2. It is further found that plaintiff's girlfriend, Stacey Laffoon, testified that she went personally to the office on Monday, April 28th and notified the employer that the plaintiff had sustained a work-related injury and that the plaintiff had in fact gone to the emergency room where he was referred to Dr. Gripe.

3. It is further found that the employer has never terminated the plaintiff's employment.

4. It is further found that the defendant through its secretary in charge of processing insurance claims testified that it is the responsibility of the supervisor once aware that an employee has sustained an injury to notify the secretary for purposes of preparing and filing worker's compensation forms and that that was not done by Mr. Schnelle; plaintiff's supervisor herein.

5. It is further found that the defendant's secretary was once again notified by the plaintiff's girlfriend, Stacey Laffoon, on May 8, 1997 of plaintiff's injury.

6. It is further found that plaintiff's supervisor, Mr. Schnelle, testified that he was in fact aware that the plaintiff complained of pain for an incident that occurred on or about April 25, 1997.

7. It is further found that the defendant did not produce an employee, manager, or supervisor who made the decision to refuse medical treatment to the plaintiff or to provide to the Board testi-

---

1. We note that Wicker specifically refused to stipulate that he was alleging an aggravation of a preexisting condition, Perthes' disease. R. at 61.

mony regarding the reasons for refusing treatment to the plaintiff.

8. It is further found that the defendant has failed to produce any evidence from any witness that the plaintiff was injured in any other event other than the incident that plaintiff testified to under oath which occurred on or about April 25, 1997 while in the employ of the defendant.

9. It is further found that the plaintiff, his girlfriend, and plaintiff's mother all testified that from approximately the time plaintiff was 15 years of age to the date of this accident that the plaintiff had no problems with his hip, did not require any active treatment for any pre-existing hip condition, and was involved in heavy physical activities during that timeframe.

10. *It is further found that the defendant has wholly failed to produce any testimony or medical evidence to substantiate the statement to the plaintiff's girlfriend at a later time that "Carlos had a pre-existing injury, and we are not going to pay for any of his medical bills."*

11. It is further found, therefore, that the plaintiff suffered a work-related injury while in the course and scope of his employment.

12. It is further found that the defendant has failed to provide any medical evaluation or treatment of the plaintiff regarding said work-related accident.

13. It is further found that the plaintiff has been unable to work from April 25, 1997 to the current date, for which he is entitled to receive temporary total disability benefits in the amount of $128.65 per week, for a total of 51.428 weeks through April 20, 1998. That equates to back temporary total disability benefits in the amount of $6,616.21.

14. It is further found that the plaintiff shall be immediately entitled to a complete evaluation by a physician of defendant's choice, at defendant's cost, who will determine the type and nature of injuries sustained as a result of the plaintiff's work-related accident on April 25, 1997, and to begin the appropriate treatment immediately.

15. It is further found that the defendant shall pay any and all outstanding medical bills hereto date incurred by the plaintiff.

16. It is further found that the Board will take under advisement plaintiff's position that the defendant has failed to comply with I.C. Section 22–3–4–12.1 and all other matters involving due diligence in the handling of this claim.

R. at 23–25 (emphasis added).

Thereafter, on May 7, 1998, Republican filed its Application for Review by Full Board. Republican subsequently filed a brief in anticipation of the hearing, challenging many of the Single Hearing Member's findings and arguing that the only medical evidence offered at the previous hearing contradicts the testimony of Wicker, his girlfriend and his mother, and establishes that Wicker is suffering from a preexisting degenerative condition known as Perthes' disease. A hearing was held before the Board on December 14, 1998, and on March 26, 1999, a majority of the members of the Board found, without issuing findings,[2] that the Single Hearing Member's decision should be reversed. Wicker now appeals.

## DISCUSSION AND DECISION

We first reach the issue regarding the Board's reversal of the Single Hearing Member's award without issuing findings of fact, as this issue could prove dispositive. We acknowledge that the Board's approach was inconsistent with IND.CODE

---

**2.** We note that nowhere in its award did the Board adopt the findings of the Single Hearing Member.

§ 22-3-4-7 of the Worker's Compensation Act which provides that the Board "shall make an award and file the same with the finding of the facts on which it is based...." Moreover, on numerous occasions, we have stated that the Board must set out written findings of fact in support of its decision so that we may intelligently review the decision without speculating as to the Board's rationale. *See, e.g., Wayman v. J & S Petroleum, Inc.,* 694 N.E.2d 767, 770 (Ind.Ct.App.1998); *Jackson v. Cigna/Ford Electronics and Refrigeration Corp.,* 677 N.E.2d 1098, 1102 (Ind.Ct.App. 1997) (citing *Talas v. Correct Piping Co.,* 275 Ind. 261, 416 N.E.2d 845, 846 (1981) and *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 31 (Ind.1981)). Further, we recently held in *Wayman* that the Board's reversal of the Single Hearing Member's award without issuing any findings left us with "no way to review the Board's determination as presently written," and, therefore, we reversed the decision and remanded with instructions to enter specific findings of fact. *Wayman,* 694 N.E.2d 767, 770 (noting that by disposing of the case in such a way, "the Board thwarted the goals of expeditious and effective review of Board determinations and protection against careless or arbitrary administrative action").

While we do not condone the Board's abbreviated disposition of the instant case, which in most instances would warrant reversal and remand, we find that remand would be superfluous here because no speculation as to the Board's rationale is required. Specifically, we note that the medical evidence indisputably demonstrates that Wicker's current hip problems are a result of a preexisting injury, that being Perthes' disease, which has entered its chronic end stage. Moreover, it is apparent to us that the Single Hearing Member simply overlooked the medical records, which were not discussed during witness testimony but were stipulated into evidence by the parties, when it found that Republican "wholly failed to produce any testimony or medical evidence to substan-

tiate the statement to [Wicker's] girlfriend ... that 'Carlos had a pre-existing injury....'" R. at 25.

Furthermore, had the Board affirmed the Single Hearing Member's award and adopted its findings, we would have been compelled to reverse. We note that when reviewing findings and conclusions of an administrative agency, we consider the evidence which tends to support the Board's decision, together with any uncontradicted adverse evidence. *Lowell Health Care Ctr. v. Jordan,* 641 N.E.2d 675, 677 (Ind.Ct.App.1994), *trans. denied.* If the evidence does not conflict, we will reverse the Board's decision only if reasonable persons would be bound to reach the opposite conclusion from the evidence in the record. *Id.* Here, the medical evidence does not conflict, as it all points to a preexisting condition. We note that Wicker offered absolutely no medical evidence to show that his injury arose from a work-related accident. To the contrary, the emergency room records, from several nights after the alleged accident, indicate that Wicker reported no trauma and explained that he had a sudden onset of pain, similar to an episode that he had in December, in his hip when he went to sit on the bed. R. at 84. From the evidence in the record, reasonable persons would be bound to reach the conclusion that Wicker suffered from a preexisting injury. Therefore, we hold that remand is unnecessary, as Wicker would not be entitled to dispositive findings in his favor. Consequently, we find that the Board's reversal is supported by substantial evidence.

Judgment affirmed.

SHARPNACK, C.J., concurs.

MATTINGLY, J., concurs in result, with opinion.

MATTINGLY, Judge, concurring in result with opinion

I concur in the majority's result; however, I have serious reservations about our failure to require that the Board, in this case, set out specific written findings of

fact in support of its decision. I write separately to remind the Full Board that the majority's decision does not obviate the need for specific written findings of fact.

Written findings of fact which support the Board's decision are necessary so that "an appellate court may intelligently review the decision without speculating as to the agency's rationale." *Wayman,* 694 N.E.2d at 770. We have required that these findings of fact be "specific." *Id.; see also Wayman v. J & S Petroleum, Inc.,* 706 N.E.2d 1107, 1109 (Ind.Ct.App. 1999). Specific findings of fact are necessary if we intend our system of administrative law to be effective. *K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 31–32 (Ind.Ct. App.1993). I am concerned that our failure to require in this case that the Board issue specific findings of fact supporting its reversal of the Single Hearing Member's decision might begin to chip away at longstanding precedent requiring specific findings of fact.

I agree, however, that the Full Board's decision was correct, and I thus concur in the result reached by the majority.