**DIAL X–AUTOMATED EQUIPMENT, Appellant (Defendant below),**

v.

**Anthony CASKEY, Appellee (Plaintiff below).**

No. 93S02–0401–EX–0008.

Supreme Court of Indiana.

May 4, 2005.

Doris L. Sweetin, Kevin C. Tyra, Tyra & Collesano, P.C., Indianapolis, IN, Attorneys for Appellant.

Patrick F. O'Leary, Goshen, IN, Attorney for Appellee.

DICKSON, Justice.

The Indiana Worker's Compensation Board found that Plaintiff Anthony Caskey, a machinist employed by defendant Dial–X Automated Equipment, was entitled to benefits under the Indiana Worker's Compensation Act. Appealing the decision of the Board, Dial–X alleged various errors regarding the Board's determinations of compensability and temporary total disability benefits. The Court of Appeals reversed in a memorandum opinion, and we granted transfer.[1]

As a result of an alleged injury sustained while working for Dial–X on May 24, 1999, Caskey was initially off work a week and a half. He returned to work from June 7, 1999, to July 27, 1999, but has not worked for Dial–X since, although he reported for work on April 3, 2000. In accordance with the Act, Dial–X paid Caskey Temporary Total Disability (TTD) and medical expense benefits to April 9, 2000. Due to the parties' disagreement primarily regarding whether Caskey should receive further medical treatment and TTD benefits from Dial–X, a hearing was held in May 2001 before a single hearing member who issued findings and conclusions on July 17, 2001, awarding Caskey continuing

---

1. 812 N.E.2d 791 (Ind.2004). As part of an ongoing experiment, this opinion departs from the usual style of citation and footnote use. *Cf.* Indiana Appellate Rule 22. Generally adhering to the footnote recommendations of Bryan Garner, *The Winning Brief,* 139–47 (2d ed.2004), all citations unessential to the text are placed in footnotes, and substantive matter that otherwise might appear in footnotes is included in the text. This revised format does not meet with universal approval. *See* Richard A. Posner, *Against Footnotes,* 38 Court Rev. 24 (Summer 2001). The public, the bench, and the bar are invited to comment to the Supreme Court Administrator, 315 State House, Indianapolis, IN 46204.

TTD benefits and expenses of additional medical care. Dial–X sought review of the award by the Full Worker's Compensation Board, which thereafter expressly adopted and affirmed the decision of the single hearing member.

### 1. Full Board Adoption of Single Hearing Member Findings

Although not challenged on appeal by Dial–X, a majority of the Court of Appeals panel opined that, by adopting without comment the decision of the single hearing member, the decision of the full board was inconsistent with Indiana Code § 22–3–4–7. This provision of the Indiana Worker's Compensation Act states in relevant part that the full board "shall make an award and file the same with the finding of the facts on which it is based."[2] The Court of Appeals decision emphasized the need for written findings of fact to enable intelligent appellate review, and asserted that mere adoption of the single hearing member decision is not equivalent to explicit adoption of its findings of fact and conclusions of law.

We believe that the distinction between "adopting the decision" and "explicitly adopting the findings and conclusions" is overly formalistic and unnecessary. It is of no consequence whether the full board makes separate findings or adopts written findings made by the single hearing member so long as the final decision of the full board may be reviewed in light of the written findings on which the decision is based. Prior cases have recognized that where a hearing officer's statements or findings are supported by the evidence and embody the requisite specificity, the board "should not hesitate to adopt and incorporate by reference the hearing officer's work,"[3] and that, assuming the appropriate scrutiny occurred, the board "is neither prohibited by statute from, nor judicially condemned for, adopting the hearing judge's decision."[4] In this case, the single hearing member made written findings and the full board found that the hearing officer's decision "should be adopted."[5] Such adoption is sufficient to attribute to the full board the explicit written findings of the single hearing member and to permit appellate review accordingly.

### 2. Compensability

Dial–X contends that the Board abused its discretion in ruling that Caskey's claimed injuries after July 27, 1999, are related to his May 24, 1999 accident and therefore compensable under the Act. Dial–X argues that the medical records "reflect contradictory stories" and "material discrepancies" regarding the severity and development of Caskey's symptoms.[6]

The Board's findings note medical evidence that, based on an August 19, 1999 examination, "there was 'reasonable medical certainty of causal relationship' between the Plaintiff's injuries and the events of May 24, 1999."[7] The findings also refer to evidence that on March 9, 2000, one of the physicians recommended the use of a spinal cord stimulator for Caskey and that this recommendation "was reiterated by various other doctors who examined and/or reviewed records of

2. Ind.Code § 22–3–4–7.

3. *Rork v. Szabo Foods*, 436 N.E.2d 64, 67–68 (Ind.1982)

4. *Wayman v. J & S Petroleum, Inc.*, 694 N.E.2d 767, 769 (Ind.Ct.App.1998).

5. Appellant's App'x. at 4.

6. Appellant's Brief at 16.

7. Appellant's App'x. at 7.

the Plaintiff's history in connection with the symptoms arising on May 24, 1999."[8]

■ In reviewing a Board decision, an appellate court considers "only the evidence most favorable to the award, including any and all reasonable inferences deductible from the proven facts."[9] Dial-X's claim of inconsistent or contradictory evidence, because it impliedly concedes that there is *some* evidence in support of the Board's findings, undermines its claim of abuse of discretion. We find that the Board's conclusion of compensability is supported by its findings, which are in turn supported by the evidence. We decline to find error on this issue.

### 3. Temporary Total Disability

■ Dial-X argues that the Board erred in three ways with respect to the award of Temporary Total Disability (TTD) benefits: (a) in finding Caskey unable to work after February 8, 2000; (b) in ordering TTD benefits after April 3, 2000; and (c) in allowing Caskey to receive TTD benefits after June 20, 2000.

### a. *Finding Caskey Unable to Work After February 8, 2000*

As to its claim of erroneous finding that Caskey was unable to work after February 8, 2000, Dial-X argues that the doctor released Caskey to light duty work effective that date, that the doctor's findings were uncontroverted but ignored by the Board, that the doctor's later opinion of continuing total disability is not based on any "medical information," and that the Board's holding is clearly erroneous because it is contrary to the undisputed evidence.[10] Central to this Dial-X claim are the following passages from the "Conclusions and Award" section of the Board's decision:

2. On February 8, 2000, Dr. Shugart first opined Plaintiff could work with a five to ten pound restriction and no repetitive bending and twisting. He maintained this opinion up until April 6, 2000, when he recommended the Plaintiff go on disability. Between February and April, Plaintiff's symptoms had not significantly worsened, according to the medical history and reports provided. The undersigned [Single Hearing Member] thus concludes Plaintiff would have been unable to work between February 8th and April 6, 2000.

3. Plaintiff's condition has not improved since April 6, 2000. He remains temporarily, totally disabled to the date of hearing, and is entitled to benefits in connection therewith . . . .

4. Further, Plaintiff is entitled to additional temporary total disability benefits until he is found to be at maximum medical improvement, or as otherwise released by his treating physician . . . .[11]

We first note that the date of February 8, 2000, stated in the "Conclusions and Award" section of the Board's decision as to when Dr. Shugart "first opined Plaintiff could work," is slightly inconsistent with the Board's own findings and with the evidence, reflecting a scrivener's error. It was, rather, on March 9, 2000, that Dr. Robert M. Shugart, M.D. saw Caskey and described his work status as "at this time, light duty, 5–10 lb. No repetitive bending

---

**8.** *Id.*

**9.** *Neidige v. Cracker Barrel,* 719 N.E.2d 441, 443 (Ind.Ct.App.1999) *transfer not sought; K-Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.*

**10.** Appellant's Brief at 12–13.

**11.** Appellant's App'x. at 7–8.

or twisting." [12] Dial–X itself refers to this evidence when identifying the point when "Dr. Shugart released Caskey back to work with restrictions." [13] Likewise, earlier in its decision at Finding 2, the Board's decision referred to Dr. Shugart's releasing Caskey for limited work as occurring on March 9, 2000.[14]

Dial–X further asserts, however, that the Board improperly concluded that Caskey "has not improved since April 6, 2000" and that he "remains temporarily, totally disabled to the date of hearing, and is entitled to benefits in connection therewith." [15] Dial–X urges that Dr. Shugart's initial opinion releasing Caskey to limited work on February 8, 2000 (corrected to March 9, 2000), coupled with the absence of change noted by Dr. Shugart between then and April 6, demonstrates the absence of support for the Board's conclusion of ongoing total disability.

In its findings, the Board noted that on April 6, 2000, Dr. Shugart "recommended disability for the Plaintiff, stating there was no work he could perform in his current condition." [16] There is evidence in the record that supports this finding. Dr. Shugart's medical entry on that date states in relevant part:

Diagnosis: status post laminotomy discectomy left L4–5, herniated disk 11–29–99.

Present condition: Tony Returns. He still has the pain. David Bojrab, M.D. felt that a stimulator was an option for him. There is nothing else we can really do as far as his neuropathic pain.

Physical Examination: unchanged.

Medical Decision Making: I think Tony is at maximum medical improvement; permanent partial impairment rating according to American Medical Association Guidelines to the Evaluation of Permanent Impairment, Fourth Edition would be lumbosacral category 3 with a 10% whole person impairment rating.

My recommendation is for disability. He really cannot sit, stand, lift, and has to do significant lying down during the day. Because of that, I now feel that recommendation is for disability. . . . I do feel that he is at maximum medical improvement.

[word obscured] status: Disability recommended since he is unable to do even sedentary work secondary to pain and inability to sit, stand, for any period of time.[17]

We understand the Board's findings and conclusion to express its determination that, although Dr. Shugart initially believed, on March 9, 2000, that Caskey could resume light, limited work, by the time of his examination on April 6, Dr. Shugart revised his opinion in light of the pervasive effects of the injury to conclude that Caskey was in fact totally disabled, which opinion the Board found credible and accepted.

*b.   TTD benefits after April 3, 2000*

Dial–X also challenges the Board decision ordering TTD benefits after April 3, 2000, arguing that the Board ignored evidence that Dial–X offered light duty work, consistent with the medical restrictions, on April 3, 2000. Workers Compensation benefits for Temporary Total Disability may be terminated if the employee has

12.  *Id.* at 69; Exhibits vol. II at 132.

13.  Appellant's Brief at 4.

14.  Appellant's App'x. at 7.

15.  *Id.* at 8.

16.  *Id.* at 7.

17.  *Id.* at 71; Exhibits Vol. II at 134.

refused to accept employment suitable to his capacity.[18]

The Board's findings and conclusions make no reference to the alleged offer of light duty work on April 3, 2000, and there is considerable, although vigorously disputed, evidence regarding the events of that day. Caskey concedes that the Board's decision "fails to address the issue of whether Caskey refused available work and if so, whether that refusal was justified," and he urges remand to the Board as the proper remedy.[19]

Adhering to our obligation to give reasonable deference to the Board's findings, we understand the Board's omission of this issue to be consistent with finding of Caskey's ongoing total disability, in accordance with Dr. Shugart's opinion of April 6, 2000. Implicit in this finding of total disability is the premise that, even if Dial–X did offer Caskey work on April 3, his medical condition was one of total disability, and he could not have performed such work. We thus conclude that the Board did not err in failing to expressly discuss the factual dispute regarding the alleged April 3 work offer.

#### c. TTD Benefits after June 20, 2000

Dial–X also contends that the Board erred in allowing Caskey to receive TTD benefits after June 20, 2000, the date the hearing before the single hearing member was continued for a third time on Caskey's motion. Dial–X argues for the adoption of a new rule estopping a worker's compensation plaintiff to continue to accrue ongoing TTD benefits while obtaining repeated continuances of Board hearings where an employer opposes payment of additional TTD on a good-faith basis.

Administration of the Indiana worker's compensation law is assigned to the Worker's Compensation Board.[20] The Board is expressly authorized "[t]o hear, determine, and review all claims for compensation" under the Act.[21] Pursuant to its rulemaking authority,[22] the Board has adopted 631 IAC 1–1–10, which prohibits the granting of continuances except for good cause.

Although requesting the adoption of a new estoppel rule, Dial–X is not asserting error in the granting of the continuances in this case. We decline to intrude upon the Board's authority to regulate its own proceedings.

#### 4. Conclusion

Having previously granted transfer, thereby vacating the memorandum decision of the Court of Appeals, we now affirm the decision of the Full Worker's Compensation Board. Because the award of the full board is affirmed on the appeal of the employer, the award shall be increased by five percent (5%) in accordance with Indiana Code § 22–3–4–8(f).

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

18. Ind.Code §§ 22–3–3–7(c)(3), 22–3–3–11.

19. Appellee's Petition to Transfer at 10.

20. Ind.Code § 22–3–1–2.

21. Ind.Code § 22–3–1–3(b)(1).

22. Ind.Code § 22–3–1–3(a).