**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 19 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**SANDRA R. PETERS**
Chandler, Arizona

ATTORNEY FOR APPELLEE:

**MARY A. SCHOPPER**
Due Doyle Fanning, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SANDRA R. PETERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1207-EX-562 |
| | ) | |
| WAL-MART, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE FULL WORKER'S COMPENSATION BOARD OF INDIANA
The Honorable Linda P. Hamilton, Chairman
Application No. C-190349

**December 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Sandra Peters ("Peters"), proceeding pro se, appeals from the Indiana Worker's Compensation Board's ("the Board") denial of her claim for worker's compensation disability benefits for post-traumatic stress disorder ("PTSD") and other physical and psychological injuries allegedly incurred as a result of her employment with Wal-Mart.

We affirm.

## Issue

Peters raises several issues for our review. We restate several of these as whether the Board's findings and conclusions denying her claim for worker's compensation benefits was supported by sufficient evidence.[1]

## Facts and Procedural History

Peters was, prior to the events giving rise to this case, a long-time employee of Wal-Mart, and worked at Wal-Mart and Sam's Club stores in several states. In 2006, Peters began work at the Wal-Mart store in Mishawaka. Peters was initially assigned to the soft goods section of the store, was found to be an excellent employee, and was given opportunities to cross-train in other areas of the store as part of a track toward a management position. Eventually, however, Peters became involved in disputes with several fellow employees and managers. Though she was disciplined formally and informally on several occasions, Peters

---

[1] Peters presents this Court with several other issues that were not properly presented to the Board, including whether Wal-Mart denied her worker's compensation claims in bad faith, discharged her from employment in retaliation for her claim, and whether judicial estopped operated to preclude Wal-Mart from advancing a rationale for denying her claim that differed from the rationale offered by the company in a different setting. Having failed to properly preserve these issues for our review, she has waived our review of those matters, and we decline to address them in our opinion today.

was not discharged from her employment.

In January 2007, Peters was injured at work when a clothing rack near her was suddenly moved, and she was subsequently placed on light duty at the Wal-Mart store. By late April 2007, however, Peters was determined to be fit to return to a regular work assignment. By that time, Peters's position in the soft goods department was no longer available to her, and she was eventually assigned to work in the grocery section of the store. This work did not suit Peters, and gave rise to more conflicts between her and other store staff.

On May 30, 2007, Peters was working at the Mishawaka Wal-Mart store as an overnight stockperson when she complained of chest pains and indicated to her immediate supervisor, Randy Shoaf ("Shoaf"), that she could not complete the work assigned to her and wished to go to the emergency room. An altercation ensued between Peters and Shoaf concerning Peters's attendance and work expectations. The altercation eventually moved to the checkout area of the store and involved at least Peters yelling at Shoaf. The altercation continued until Peters's husband arrived to take her to the hospital.

Upon evaluation in the emergency room, Peters was diagnosed as having had a panic attack, and as being anemic because of uterine bleeding. Peters was admitted into the hospital for overnight care, and received a blood transfusion to treat her anemia. After discharge from the hospital, Peters did not return to work at Wal-Mart.

On June 28, 2007, Peters began follow-up care with her primary physician, Michael Galbraith, D.O. ("Dr. Galbraith"). Dr. Galbraith initially diagnosed Peters with iron

deficiency anemia, leiomyoma of the uterus, and depressive disorder. He eventually became concerned that the increase in Peters's anxiety levels was consistent with Post-Traumatic Stress Disorder ("PTSD"), and referred her to Katherine L. Steele, Ph.D. ("Dr. Steele") for psychological care. Dr. Galbraith and Dr. Steele concurred in rendering a PTSD diagnosis concerning Peters. Each opined that she would be unable to return to work at the Mishawaka Wal-Mart because continuing to work at that store would likely trigger additional PTSD symptoms. On November 12, 2007, Peters checked into another hospital, Saint Anthony Memorial, where she remained as a psychiatric in-patient for four days and received treatment for her symptoms. After her discharge from Saint Anthony, Peters continued to receive care from Dr. Galbraith and Dr. Steele until 2009, when Peters and her family moved to Indianapolis.

On October 29, 2007, Peters submitted her claim for worker's compensation benefits to Wal-Mart. On December 19, 2007, Peters's claim was denied. On January 16, 2008, Peters submitted her application for adjustment of claim to the Indiana Worker's Compensation Board, contending that her PTSD diagnosis was the result of "abuse from her former boss." (Appellant's App. at 12.)

During the pendency of Peters's claim before the Board, Peters submitted to an independent medical examination conducted by Celestine DeTrana, M.D. ("Dr. DeTrana"). Dr. DeTrana's evaluation disagreed with the PTSD diagnosis from Dr. Steele and Dr. Galbraith. She concluded instead that Peters suffered from severe anemia at the time of the May 30, 2007 incident, and that anxiety from the anemia combined with Peters's stress-

4

coping strategies and tendency to initiate confrontations with coworkers and supervisors caused Peters's apparent panic attack.

After further discovery and a hearing on September 21, 2011, a single member of the Board entered findings and conclusions denying Peters's claim on November 28, 2011. Peters appealed to the full Board on December 2, 2011.

During the pendency of the appeal to the Board, Peters moved to supplement the hearing record with additional evidence related to a suit Peters had filed in the United States District Court for the Northern District of Indiana; the Board denied the motion. After a hearing on May 14, 2012, the Board largely adopted the findings and conclusions of the single member's decision and, with the addition of some of its own findings and conclusions, the full Board also denied Peters's claim. In denying Peters's claim, both the single member and the full Board found Dr. DeTrana's diagnosis more credible than Dr. Galbraith's and Dr. Steele's diagnosis of PTSD caused by a hostile work environment at Wal-Mart.

This appeal ensued.

**Discussion and Decision**

On appeal, Peters contends that the Board's denial of worker's compensation benefits is erroneous because there was no competent evidence to permit the Board to conclude that Peters's symptoms—whatever their diagnosis—was not caused by an injury incurred in the scope of her employment with Wal-Mart.

"The Worker's Compensation Act provides for compensation of employees who are injured by an 'accident arising out of and in the course of employment.' Milledge v. Oaks,

784 N.E.2d 926, 929 (Ind. 2003). To receive worker's compensation benefits, a claimant must prove both elements. Id." Kehr Mid-W. Iron v. Bordner, 829 N.E.2d 213, 215 (Ind. Ct. App. 2005). On appeal, we review the Board's decision "'only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions.'" Young v. Marling, 900 N.E.2d 30, 34 (Ind. Ct. App. 2009) (quoting Bertoch v. NBD Corp., 813 N.E.2d 1159, 1160 (Ind. 2004)). We do not reweigh evidence or judge the credibility of witnesses. Id.

We apply a two-tiered standard of review when evaluating a decision by the Board. Id. "We first review the record to determine if there is any competent evidence of probative value to support the Board's findings. Next, we examine the findings to see if they are sufficient to support the decision." Id. Where the matter was heard and written findings were entered by a single hearing member and the Board found that the hearing officer's decision should be adopted, "'[s]uch adoption is sufficient to attribute to the … [B]oard the explicit written findings of the single hearing member and to permit appellate review accordingly.'" Id. (quoting Dial X-Automated Equip. v. Caskey, 826 N.E.2d 642, 644 (Ind. 2005)). We therefore examine the evidence recited in the single hearing member's decision and the findings and conclusions therein, as well as the separate findings and conclusions of the Board. See id.

Where, as here, an incident is alleged to have resulted in a permanent medical condition, the alleged causal relationship "is ordinarily a complicated medical question outside the understanding of laypersons, and expert testimony on the issue is required."

6

Outlaw v. Erbrich Prods. Co., 777 N.E.2d 14, 28-29 (Ind. Ct. App. 2002), trans. denied.

Where a claimed medical condition occurs after an alleged accident, "an expert's opinion is insufficient to establish causation when it is based only upon a temporal relationship between an event and a subsequent medical condition." Id. at 29. But "[u]ltimately, the Board is free to accept or reject expert testimony." Id. (citing Hill v. Worldmark Corp./Mid Am. Extrusions Corp., 651 N.E.2d 785, 787 (Ind. 1995)).

Here, the single hearing member's findings reviewed evidence from deposition testimony given by several of Peter's coworkers and supervisors at Wal-Mart; testimony from Dr. Galbraith and Dr. Steele, as well as medical records generated in the course of their treatment of Peters; the report from Dr. DeTrana's examination of Peters; and medical records from two of Peters's hospital visits. After a review of the evidence, the single hearing member found that Peters had troubled relationships with coworkers and supervisors, "initiated the 'confrontations' herself," and "was unable to play well with others due to her own personality disorder and coping style." (Appellant's App. at 20-21.)

The single hearing member also found:

> 57. The stipulated medical evidence shows that Plaintiff presented to Dr. Galbraith on June 28, 2007, for follow up after the May 31, 2007 hospitalization. Dr. Galbraith notes Plaintiff was not anxious and not depressed. The doctor diagnosed iron deficiency anemia, leiomyoma of uterus, and depressive disorder. PTSD was not diagnosed or considered as a differential diagnosis.
>
> 58. The stipulated medical evidence shows that on November 23, 2009, Dr. DeTrana, a psychiatrist, who reviewed all of the evidence and evaluated Plaintiff, determined that she does not have PTSD but rather suffered from anemia and complications thereto along with a personality disorder and history of difficult relationships.

7

59. Dr. Galbraith testified that anemia can cause anxiety.

60. Dr. Galbraith testified that he did not consider the diagnosis of PTSD until he spoke with Dr. Steele, the psychologist who made the diagnosis, and further that he did not know any of the specific allegations made by Plaintiff against Defendant.

61. Dr. Steele, in her April 21, 2011 letter to Plaintiff's counsel, notes "[a]s [Plaintiff's] therapist, my goal was not to satisfy myself as to the specifics of her trauma as much as it was to stabilize her emotionally…"

62. Dr. DeTrana opines that "[Plaintiff] could not possibly have PTSD, as she did not experience a trauma that was anywhere near the type of severe, life threatening trauma before the PTSD diagnosis is considered."

63. It is incredible that Drs. Galbraith and Steele would diagnose post traumatic stress without confirming that a trauma did in fact occur.

64. Dr. DeTrana's opinion is more credible than that of Dr. Steele, who admits she was not concerned whether an actual trauma occurred before making the PTSD diagnosis, as well as Dr. Galbraith, who was totally unaware of the "facts" relied upon by Dr. Steele.

(Appellant's App. at 20.)

While acknowledging stressful situations in Peters's past, including family problems and physical abuse as a child, the single hearing member concluded that Peters "did not sustain an accidental psychological injury arising out of and in the course of employment," and thus was not entitled to worker's compensation benefits as a result of her claim. (Appellant's App. at 21.) The full Board reached a similar conclusion, repeating significant portions of the single hearing member's findings concerning the question of Peters's PTSD diagnoses, and affirming the single member's decision as modified. (Appellant's App. at 26.)

Based upon our review of the evidence, we cannot conclude that the Board lacked competent evidence from which to conclude that Peters's PTSD diagnoses were not credible or that, in any event, confrontations initiated by other employees at work caused any of Peters's psychological disorders. With respect to the credibility of the PTSD diagnoses, such matters are particularly within the scope of the Board's competence to review. Neither the Board nor the single hearing member substantially misrepresented or cherry-picked evidence from the medical reports and testimony offered by Dr. DeTrana, Dr. Galbraith, or Dr. Steele. Much of Peters's argument with respect to the PTSD diagnoses asks that we reweigh the Board's determination of the credibility of the various medical professionals, favoring the diagnoses of Drs. Galbraith and Steele over those of Dr. DeTrana. The Board is free to make such determinations and we may not reweigh them. Outlaw, 777 N.E.2d at 29. We accordingly decline to reverse the Board's decision on that basis.

For similar reasons, we cannot conclude that the Board erroneously denied Peters's worker's compensation claim on the basis of any injury Peters claims arose from intentional harassment. While Peters is correct that intentional harassment that gives rise to an accidental injury at work may be compensable under Indiana's worker's compensation laws, "[t]he mere fact that an injury occurs at work does not, ipso facto, render it compensable." Hansen v. Von Duprin, Inc., 507 N.E.2d 573, 576 (Ind. 1987).

Here, Dr. DeTrana concluded that Peters's psychological coping mechanisms, aggravated by her anemia, caused her to misperceive her relationships with fellow Wal-Mart employees and led to "an unfortunate case of misattribution which has gotten out of hand,"

9

so that "[w]hat felt like a panic attack on May 30, 2007 was in large part due to the growing symptoms of profound anemia." (Appellant's App. at 190.) Dr. DeTrana's assessment is consistent with the deposition testimony of Shoaf and several other Wal-Mart employees, who testified that Peters would initiate or escalate confrontations with coworkers. These escalations included Peters's conduct on May 30, 2007, which gave rise to the present case.

In light of this evidence, the Board found Dr. DeTrana's assessment credible and did not conclude that any harassment or other conduct originating with Peters's fellow employees gave rise to her panic attack or other psychological or physiological symptoms. Rather, the Board concluded that Peters "initiated the 'confrontations' herself." (Appellant's App. at 21.) To the extent Peters now directs us to the reports and testimony of other medical providers, we decline her invitation to reweigh the evidence.

We cannot conclude that the Board erred when it found that any psychological or other injury Peters suffered on May 30, 2007, did not arise from an accidental injury at work. Thus we do not disturb the Board's decision to deny her claim for worker's compensation benefits.

Affirmed.

VAIDIK, J., and BROWN, J., concur.