DePUY, INC., Appellant–Plaintiff,

v.

Anthony FARMER, Appellee–Defendant.

No. 93A02–0404–EX–301.

Court of Appeals of Indiana.

Oct. 5, 2004.

James P. Buchholz, Larry L. Barnard, Miller Carson Boxberger & Murphy LLP, Fort Wayne, IN, Attorneys for Appellant.

David C. Kolbe, Warsaw, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, DePuy, Inc. (De-Puy), appeals the award entered by the Full Worker's Compensation Board (Full Board) entitling Appellee–Plaintiff, Anthony Farmer (Farmer), to worker's compensation benefits as a result of work-related injuries.

We reverse.

### ISSUES

DePuy raises two issues on appeal, which we restate as follows:

1. Whether Farmer's claim for worker's compensation benefits, pursuant to Ind.Code § 22–3–2–13, is barred as a result of the settlement of his intentional tort action against co-employee, Wynn Swindel (Swindel); and

2. Whether Farmer's claim for worker's compensation benefits is barred because the injury arose out of horseplay.

*FACTS AND PROCEDURAL HISTORY*

On the morning of September 1, 1994, Farmer was clocking out of his third-shift service at DePuy. As Farmer was headed towards the time-clock, a first-shift co-employee, Swindel, was waiting to begin his workday. While passing Swindel, Farmer brushed his time-card against Swindel's side. Swindel became enraged and attacked Farmer, pressing him backwards over a machine causing severe injuries to his back. These injuries led to time off of work, surgery, and large medical bills.

On August 28, 1996, Farmer filed his complaint for worker's compensation benefits with the Worker's Compensation Commission because his injury arose out of his employment with DePuy. At the same time, Farmer filed a complaint against both DePuy and Swindel in the Kosciusko Superior Court, alleging that both parties were liable for Swindel's battery against him. In October of 1998, DePuy filed its Motion to Dismiss, claiming that Farmer was not entitled to worker's compensation benefits because the injuries resulted from horseplay between Farmer and Swindel. On May 5, 1999, the Hearing Judge of the Worker's Compensation Board (Hearing Judge) rejected DePuy's motion. On April 28, 1999, Farmer and Swindel entered into a settlement agreement whereby Farmer agreed to dismiss his civil suit against Swindel and release him from any liability as a result of the battery in consideration of payment of $3,000.00.

Thereafter, on June 3, 1999, DePuy filed its second Motion to Dismiss based on the allegation that the Worker's Compensation Board lacked subject matter jurisdiction due to the settlement between Farmer and Swindel. On October 21, 1999, the Hearing Judge granted DePuy's motion.[1] Subsequently, on March 27, 2000, after Farm-

er's application for review of the Order by the Full Board, the Full Board reversed the Hearing Judge's amended Order. According to the Order of the Full Board, Farmer was directed to transfer to DePuy the settlement amount of $3,000 as a condition to pursue his worker's compensation claim. On or about January 1, 2001, Farmer yielded the sum to DePuy.

On October 8, 2002, the Hearing Judge conducted a hearing on Farmer's Application for Adjustment of Claim. On April 8, 2003, the Hearing Judge issued its Order, finding in favor of Farmer. Twenty days later, DePuy filed its Application for Review by the Full Board. On January 9, 2004, after both parties filed briefs in support of their respective claims, the Full Board issued its Order in favor of Farmer.

DePuy now appeals. Additional facts will be provided as necessary.

*DISCUSSION AND DECISION*

I. *Standard of Review*

■ The Indiana Worker's Compensation Act is the exclusive remedy of an employee injured in an accident arising out of and in the course of employment with his employer. I.C. § 22–3–2–13. Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Worker's Compensation Board. *Waldridge v. Futurex Industries*, 714 N.E.2d 783, 785 (Ind.Ct.App.1999), *trans. denied.* Generally, on appeal, we review the Full Board's decision to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Full Board's findings and conclusions. *Id.*

■ But where the question before the court is primarily a legal question, we do not grant the same degree of deference to

---

1. This Order was amended on November 10, 1999.

the Full Board's decision. *Id.* When interpreting the provisions of the Worker's Compensation Act, we construe the Act and resolve doubts in the application of the terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy. *Id.*

## II. *Settlement of Farmer's Intentional Tort Action*

First, DePuy contends that the Full Board erred in granting worker's compensation benefits to Farmer. Specifically, DePuy contends that Farmer's claim for worker's compensation benefits against DePuy is statutorily barred as a result of his settlement of the intentional tort action against his co-employee, Swindel.

At the outset we note that the Worker's Compensation Act provides an exclusive remedy against an employer for accidental injuries that arise out of and in the course of the injured victim's employment. *See* I.C. § 22–3–2–6. Its purpose is to provide injured employees with statutory rights to compensation from their employer regardless of fault. *See Waldridge*, 714 N.E.2d at 786. Furthermore, under section 13 of the Act, an injured employee may bring an action against a third party who has an alleged legal liability to pay damages for the injury. I.C. § 22–3–2–13. Thus, section 13 is a well established exception to the general rule limiting an employee's recovery of job-related accidental injuries to worker's compensation because it permits the injured employee to bring suit against individuals other than the employer or fellow employees. *See Waldridge*, 714 N.E.2d at 785.

■ Nevertheless, in analyzing the applicability of intentional torts committed by co-employees under the accidental requirement of the Worker's Compensation Act, our Supreme Court in *Tippmann v.*

*Hensler*, 716 N.E.2d 372 (Ind.1999), specifically determined that the immunity of the Act does not extend to immunity from intentional torts. *Id.* at 380. Our supreme court stated:

As we noted in *Stump v. Commercial Union*, 601 N.E.2d 327 (Ind.1992), "The long-standing rule of this jurisdiction is that the Worker's Compensation Act should be liberally construed to effectuate the humane purposes of the Act ..." (citation omitted). We do not believe those "humane purposes" include shielding from civil liability an employee who intentionally injures his fellow employee. Finally, we see little danger that allowing an employee to sue a co-employee for an intentional tort might lead to double recovery. (citations omitted). Such a fear, however, is unfounded because the employer or its worker's compensation insurance carrier would have subrogation rights to the award under Ind.Code § 22–3–2–13. Such subrogation would thereby repay the insurance carrier or company for the cost of the intentional wrong. In this way subrogation also prevents the intentional tortfeasor from shifting the cost of his wrongdoing onto the industry and the consumer.

*Tippmann*, 716 N.E.2d at 380. Thus, in the event of an intentional tort committed by a fellow employee, the Act's immunity is lifted and the victim is allowed to bring a civil liability claim against the fellow employee-tortfeasor.

In the present case, we agree with Farmer that the pursuit of a worker's compensation claim against his employer, DePuy, together with an intentional tort claim against Swindel, his co-employee, is not mutually exclusive. However, our review reveals that Farmer settled his suit against Swindel without DePuy's consent on April 28, 1999, in consideration of a

payment of $3,000.00. Therefore, in keeping with the spirit of I.C. § 22–3–2–13 to prevent double recovery, the logical result of the settlement agreement between Farmer and Swindel would be the barring of Farmer's pursuit of his worker's compensation claim against DePuy. However, our inquiry does not end here.

As alluded to by our supreme court in *Tippmann*, the ninth paragraph of nine lengthy unnumbered sections in I.C. § 22–3–2–13 contains subrogation rights for the employer and employer's insurer in the event of a release or settlement of a claim. This section provides that:

> No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or employer's compensation insurance carrier has been fully indemnified or protected by court order.

I.C. § 22–3–2–13.

In *Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299, 1308 (Ind.1998), by way of a certified question from the United District Court for the Northern District of Indiana, our supreme court clarified this particular section of the Worker's Compensation Act, with special emphasis on the language "fully indemnified or protected by court order." In its analysis, the supreme court stated that the section "protects or indemnifies" the employer refers to the creation of a statutory obligation for the employee to pay the subrogation amounts to the employer. *Id.* at 1309. This is in line with preventing double recovery, one of the purposes of the Worker's Compensation Act.

Furthermore, the supreme court explained that the section provides for only two means of settling claims. The employer must either give written consent or be "fully indemnified or protected by court order." *See* I.C. § 22–3–2–13. Analyzing the legislature's reason for requiring written consent as one alternative, the court determined that without a consent requirement, an employee could settle a lawsuit for an amount well below medical and disability costs and leave the employer without any avenue for reimbursement. *Koval,* 693 N.E.2d at 1309. Thus, requiring written consent protects the employer from being shortchanged without its advance approval.

Turning to the second alternative, *i.e.,* the absence of a written consent, our supreme court held that a settlement agreement is only valid if the employer is "indemnified or protected by court order." *Id.* As a substitute for the consent requirement, this language is directed to the same purpose: making sure the employer is not deprived of its recovery. *Id.* Referencing a long line of Indiana cases, our supreme court clarified that an employer will be protected if, for example, the monies owed are set aside for the employer by court order in an escrow account or a similar arrangement. *Id.* The supreme court further noted that these forms of protection amount to a complete protected assurance that the employer will be paid without further litigation. *Id.* While focusing on the construction of the quoted section, the supreme court pointed out that the term "protection" is used as a substitute for consent in tandem with "indemnification by court order," *i.e.,* a court order directing reimbursement. Therefore, the court concluded, this too implies reasonable assurance of reimbursement. *Id.* In sum, "protection" means the employer is as-

sured of recovery and consent is unnecessary.

■ Here, our review discloses that after the settlement between Farmer and Swindel was executed, the Full Board, on March 27, 2000 issued the following Order:

> It is further found by the [Full Board], by a majority of its members, that the [Hearing Judge]'s corrected award dated November 10, 1999, is reversed and the following Finding and Award are entered:

> Pursuant to I.C., sec. 22–3–2–13, the Mutual Release between [Farmer] and [Swindel], dated April 28, 1999, is invalid as between [Farmer] and [DePuy] because it was not consented to by [DePuy] or [Depuy]'s Worker's Compensation insurance carrier. [Farmer] shall tender to [DePuy] the civil settlement sum of $3,000.00, as a condition of pursuing any remedy under the Worker's Compensation Act.

(Appellant's App. p. 5). The record indicates that pursuant to this Order, Farmer tendered the settlement amount to DePuy.

As our supreme court in *Koval* explained, written consent is only one alternative to ensure the enforceability of a settlement. *See Koval*, 693 N.E.2d at 1309. A settlement executed without consent is enforceable provided the employer is protected. *See* I.C. § 22–3–2–13; *see also id.* In the instant case, we find that the Full Board, by ordering Farmer to reimburse the settlement amount to DePuy, effectively ensured that DePuy was not deprived of its recovery. Thus, DePuy was protected by this arrangement of the Full Board. Transferring the sum of $ 3,000.00 also prevented double recovery by Farmer and resulted in a retention of his rights to worker's compensation benefits.

In sum, we find that although Farmer brought a claim of intentional tort against Swindel while at the same time pursuing worker's compensation benefits against DePuy, his settlement of the intentional tort action did not bar his rights under I.C. § 22–3–2–13. *See Tippmann*, 716 N.E.2d at 380. Even though the settlement of the intentional tort claim between Swindel and Farmer was not consented to by DePuy, nevertheless, we hold that the Full Board's Order, by ordering a reimbursement of this settlement amount to DePuy, resulted in subrogation rights for DePuy. *See id.* Moreover, we conclude that the Full Board's Order prevented a double recovery by Farmer and ensured that DePuy was protected. *See Koval*, 693 N.E.2d at 1308; I.C. § 22–3–2–13. Accordingly, we find that Farmer's claim for worker's compensation benefits against DePuy is not statutorily barred. *See Waldridge*, 714 N.E.2d at 785.

### III. *Accidental Injury*

Next, DePuy contends that the Full Board erred in awarding worker's compensation benefits to Farmer because Farmer's injuries resulted from horseplay. Therefore, DePuy maintains, since Farmer's injuries did not arise out of his employment and were not to the benefit of his employer, Farmer is not entitled to receive worker's compensation benefits. On the other hand, Farmer argues that the evidence presented to the Full Board was sufficient to establish that his injuries arose out of and in the course of his employment at DePuy.

■ The Worker's Compensation Act authorizes the payment of compensation to employees for personal injury or death by accident arising out of and in the course of the employment. I.C. § 22–3–2–2(a). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services per-

formed by the injured employee. *Milledge v. Oaks*, 784 N.E.2d 926, 929 (Ind.2003). An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Id.* Both requirements must be met before compensation can be awarded and neither alone is sufficient. *Conway v. Sch. City of East Chicago*, 734 N.E.2d 594, 598 (Ind.Ct.App. 2000), *trans. denied.*

There is no question that the injuries sustained by Farmer occurred in the course of his employment. The record clearly establishes that Swindel attacked Farmer on DePuy's premises at the moment Farmer intended to clock out of his third-shift service. Rather, the question in the present case is whether Farmer's injuries arose out of his employment.

 Commenting on the causal connection necessary to show that an accidental injury arises out of employment, our supreme court has stated that "[the] nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Milledge*, 784 N.E.2d at 929 (quoting *Wine–Settergren v. Lamey*, 716 N.E.2d 381, 389 (Ind.1999)). Risks incidental to employment fall into three categories: 1) risks distinctly associated with employment; 2) risks personal to the claimant; and 3) risks of neither distinctly employment nor distinctly personal character. *Id.* While risks in the first and third categories may be covered by worker's compensation, those personal to the claimant, caused by a pre-existing illness or condi-

tion unrelated to employment, are not compensable. *Id.*

In *Milledge*, the supreme court elaborated on each category. As such, the court clarified that the underlying theme of the first category comprises cases where the injury sustained was the result of conditions inherent in the work environment. *See id.* at 930. In this case, there was nothing inherent in DePuy's premises that either caused or contributed to Farmer's injury. Thus, his injury was not born out of a risk categorized as distinctly associated with his employment. Looking at the second category, personal risks, we cannot conclude that Farmer's injury was the result of a pre-existing illness or condition. That leaves us with the third category, the neutral risks.

 In *Milledge*, our supreme court adopted the positional risk doctrine to analyze the categories of cases where the risk incidental to employment is neither distinctly related to the employment, nor distinctly personal in character. *Id.* at 930. Under this doctrine "an injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Id.* at 931. Here, Farmer, as a condition of his employment, had to punch his time card at the end of his shift. As a result, he encountered Swindel who was waiting to clock in to start his first shift. Accordingly, the obligations of Farmer's employment appear to place him in a position where he was injured. *See id.*

[12] Nevertheless, we must bear in mind that prior to clocking out, Farmer brushed his time-card against Swindel's side. The record supports that Swindel, having a bad day and being in a grouchy mood, became enraged and attacked Farmer. It is well established that Indiana follows the general rule, that an

injury by an employee, sustained in the course of his employment in a fight with a co-employee which does not arise out of the employment is not compensable under the Act. *See Rogers v. Bethlehem Steel Corp.,* 655 N.E.2d 73, 76 (Ind.Ct.App. 1995); *see also Peavler v. Mitchell & Scott Mach. Co., Inc.,* 638 N.E.2d 879, 881 (Ind. Ct.App.1994) (in distinguishing *Peavler,* where the assault was committed in the workplace by a third party, we stated that personal squabbles with a co-employee culminating in an assault are not compensable). On the other hand, we have also previously stated that an assault by a co-employee which arises out of the employment, where the assault is reasonably incidental to the work and where a disagreement or quarrel between co-employees arises out of the work in which they are engaged, and as a result one employee assaults and injures the other, it may be inferred that the injury arose out of the employment. *See Rogers,* 655 N.E.2d at 76. However, this is not the case here.

██ The evidence indicates that Farmer, intending to end his shift by clocking out, wished Swindel a good morning and touched him on the side with his time card. The record is devoid of any evidence, nor do the parties offer any, that at the time of the battery, Swindel assaulted Farmer because of a disagreement arising out of their customary work obligations. Rather, we find that the quarrel was a consequence of Swindel's bad start of the day and grouchy mood. Starting out irritably, Swindel introduced his personal problems into the work environment, which eventually resulted in Farmer's injuries. Thus, we conclude that Farmer's injuries, although sustained in the course of his em-

ployment, do not arise out of his employment with DePuy.

Therefore, keeping in mind our deferential standard of review, we find that the evidence, together with the reasonable inferences therefrom, do not support the Full Board's finding that Farmer's injuries arose out of and during the course of his employment, which in turn does not support its conclusion that Farmer is entitled to worker's compensation benefits. *See Waldridge,* 714 N.E.2d at 785. Accordingly, we conclude that the Full Board erred in awarding Farmer worker's compensation benefits.

## CONCLUSION [2]

Based on the foregoing, we conclude that Farmer's claim for worker's compensation benefits against DePuy, pursuant to Ind.Code § 22–3–2–13, is not barred. Furthermore, we reverse the Full Board's award because Farmer's claim for worker's compensation benefits did not arise out of his employment with DePuy.

Reversed.

CRONE, J., concurs.

VAIDIK, J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in part and dissenting in part.

I concur in Part II of the majority's opinion. I must respectfully dissent from Part III, however, in which the majority holds that Farmer's injuries are not compensable under the Indiana Worker's Compensation Act because his injuries did not arise out of employment. Particularly in light of our deferential standard of review, I would affirm.

**2.** Since we reverse the Order of the Full Board, we do not need to address Farmer's cross-appeal, whether the award of the Full Board should be increased by ten percent pursuant to I.C. § 22–3–4–8(f) based on the long delay in the proceedings.

The Worker's Compensation Act covers injuries that "arise out of and in the course of" a person's employment. Ind.Code § 22–3–2–2(a); *Global Constr., Inc. v. March,* 813 N.E.2d 1163, 1165 (Ind.2004). As the majority points out, only the "arise out of" requirement is at issue in the present case. An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *March,* 813 N.E.2d at 1165–66. This causal nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Milledge v. The Oaks,* 784 N.E.2d 926, 929 (Ind.2003). Risks incidental to employment fall into three categories: (1) risks distinctly associated with employment; (2) risks personal to the claimant; and (3) risks of neither distinctly employment nor distinctly personal in character. *Id.* at 930. Risks that fall within categories one and three are generally covered under the Worker's Compensation Act while those that fall within category two are not compensable. *Id.* As noted by the majority, this case involves a category three risk. To analyze this category of risks, our supreme court has adopted the positional risk doctrine. *Id.* at 931. Under this doctrine, "[a]n injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Id.* at 932.

In its recent case of *Global Construction, Inc. v. March,* the Indiana Supreme Court addressed whether Daniel March's injury, which was caused by strikers as he was leaving the jobsite, arose out of his employment. In that case, as March was leaving the jobsite, strikers threw an object at his windshield. When a second object cracked his windshield, March stopped his truck. A verbal confrontation ensued, and March was struck in the head with a 2 × 4, causing significant injuries. Our supreme court explained that when determining whether a risk or injury is incidental to employment, courts should consider:

> the type of activity in which the employee was engaged when injured and [its] relationship to: his duties; the reasonableness of employee's acts in relation to the sum total of conditions and circumstances constituting the work setting at the time of injury; and finally, the knowledge and acquiescence of the employer in situations where acts incidental to employment are being done in violation of company rules.

*March,* 813 N.E.2d at 1169 (quotation omitted). The pivotal question is whether the person's employment increased the hazard that led to the injury. *Id.* The court ultimately held that March's injury arose of his employment because "it seems obvious that [he] was struck because of his employment, and if he were a passing motorist rather than an employee exiting a plant under strike his injuries would never have been sustained." *Id.*

In holding that Farmer's injuries did not arise out of his employment, the majority relies on two cases, both of which are readily distinguishable from the present case. In *Rogers v. Bethlehem Steel Corp.,* 655 N.E.2d 73 (Ind.Ct.App.1995), Joseph Rogers, who was known to carry large sums of money to work and had in the past loaned money to various co-employees including Garry Moore, was robbed and murdered by Moore at work. Rogers and Moore were seen arguing at work several days before Rogers' murder about a matter that was personal in nature and unrelated to employment. Additionally, Moore

told someone prior to Rogers' murder that he was going to kill Rogers. This Court held that Rogers' death did not arise out of his employment because it resulted from "a risk personal to himself, i.e., the carrying and loaning of large sums of money." *Id.* at 76. Unlike *Rogers,* here there is no evidence that Farmer's injuries resulted from a risk personal to him. Rather, Swindel attacked Farmer because Farmer brushed his timecard against Swindel's side as he was clocking out of work for the day. The second case, *Peavler v. Mitchell & Scott Machine Co., Inc.,* 638 N.E.2d 879 (Ind.Ct.App.1994), *reh'g denied,* is clearly inapposite. There, an employee was killed by her ex-boyfriend at work. Here, the dispute was between fellow employees at work.

Unlike the facts in *Rogers* and *Peavler,* the facts here show that Farmer's injuries arose out of his employment. Farmer, as a condition of his employment, was required to punch his time card at the end of his shift. While doing so, he encountered Swindel, who was waiting to clock in to start his shift. Thus, the obligations of Farmer's employment placed him in a position where he was injured. Additionally, Farmer's actions of wishing a fellow employee a good morning while clocking out (even though he brushed his timecard against that employee's side in the process) is entirely reasonable in relation to the work setting. Among the many aspects of employment is the social interaction with fellow employees both while performing one's actual work and, as here, while performing tasks incident to one's work, such as clocking in and out. Based on the considerations set forth in *March,* Farmer's injuries arose out of his employment.

In sum, I believe the evidence does not lead clearly and inescapably to the opposite conclusion of the Full Board, which found that Farmer's injuries arose out his employment. *See March,* 813 N.E.2d at 1169. I would therefore affirm the Full Board on this issue.