ATTORNEYS FOR APPELLANT
James P. Buchholz
Larry L. Barnard
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
David C. Kolbe
Warsaw, Indiana

# In the
# Indiana Supreme Court

No. 93S02-0503-EX-97

DEPUY, INC.,

*Appellant (Plaintiff below),*

v.

ANTHONY FARMER,

*Appellee (Defendant below).*

Appeal from the Worker's Compensation Board, No. 139388

On Petition To Transfer from the Indiana Court of Appeals, No. 93A02-0404-EX-301

**May 17, 2006**

**Boehm, Justice.**

An injured worker settled a civil suit against a co-employee for an intentional injury in the workplace. We hold that the settlement reached before worker's compensation benefits have been resolved does not bar the injured employee from pursuing worker's compensation for that injury, but if worker's compensation benefits are awarded, the employer is entitled to subrogation rights to prevent double recovery.

**Facts and Procedural History**

On September 1, 1994, as Anthony Farmer started to clock out at the end of his shift at DePuy Manufacturing, Inc., he brushed his time card against Wynn Swindel's side. In response,

Swindel, who weighed approximately 470 pounds, yelled at Farmer, pinned him against a machine, and bent him backwards over it. Farmer sustained severe injuries to his back, resulting in lost work, surgery, and medical bills.

Farmer requested worker's compensation benefits in the amount of $58,556 in medical expenses, $3,312 for eight weeks temporary total disability, and $16,250 for twenty-five percent permanent impairment. He also filed a civil suit against Swindel for battery and DePuy for negligence. The trial court dismissed the civil claim against DePuy on the basis that the Worker's Compensation Act (WCA) barred a civil tort claim against Farmer's employer for injuries sustained in this workplace incident.

DePuy also moved unsuccessfully to dismiss the worker's compensation claim as arising from "horseplay" not governed by the WCA. After Swindel paid Farmer $3,000 to settle the battery suit, DePuy renewed its motion to dismiss the worker's compensation claim, this time on the ground that it had not consented to the agreement between Farmer and Swindel. The Hearing Judge agreed that the Worker's Compensation Board lacked jurisdiction as a result of Farmer's "third-party settlement" with Swindel. The Board reversed the Hearing Judge but directed Farmer to remit the $3,000 settlement sum to DePuy as a condition to maintaining his worker's compensation claim.

Worker's compensation applies to injuries incurred "by accident arising out of and in the course of" employment. The Hearing Judge found that Farmer's injuries met these requirements, and the Board affirmed, but a divided panel of the Court of Appeals reversed the Board. The Court of Appeals agreed with the Board that the civil settlement did not bar Farmer's worker's compensation claim, but held, with Judge Vaidik dissenting, that Farmer's injuries "although sustained in the course of his employment, [did] not arise out of his employment with DePuy." DePuy, Inc. v. Farmer, 815 N.E.2d 558, 565 (Ind. Ct. App. 2004). We granted transfer. DePuy, Inc. v. Farmer, 831 N.E.2d 740 (Ind. 2005).

**Standard of Review**

DePuy first argues that the Worker's Compensation Board erred when it affirmed the Hearing Judge's finding that Farmer's injuries arose out of his employment. To the extent this

2

finding turns on disputed facts, "[o]n appeal, we review the decision of the Board, not to re-weigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions." Walker v. State, 694 N.E.2d 258, 266 (Ind. 1998). To the extent the issue involves a conclusion of law based on undisputed facts, it is reviewed de novo. Id. DePuy also argues that Farmer's settlement with Swindel in the civil suit bars his worker's compensation claim. The resolution of this issue involves a question of law which we review de novo. Id.

## I. Application of Worker's Compensation Act

The WCA provides "compensation for personal injury or death by accident arising out of and in the course of employment." Ind. Code § 22-3-2-2 (2004). The parties do not dispute that Farmer's injuries arose "in the course of" his employment with DePuy. He was injured while at work when he was in the process of clocking out at the end of his shift. This was clearly "in the course of" his employment because clocking in and out was part of Farmer's job. See Global Constr., Inc. v. March, 813 N.E.2d 1163, 1166 (Ind. 2004) ("An accident occurs 'in the course of' employment when it takes place at the time and place of a person's employment while an employee is fulfilling his duties."); Bertoch v. NBD Corp., 813 N.E.2d 1159, 1161 (Ind. 2004).

DePuy argues that Farmer's injuries were incurred in "horseplay" and therefore were not compensable under the WCA because they did not "arise out of" his employment. The Court of Appeals held that Farmer's injuries did not arise out of his employment because "the quarrel was a consequence of Swindel's bad start of the day and grouchy mood. Starting out irritably, Swindel introduced his personal problems into the work environment, which eventually resulted in Farmer's injuries." DePuy, 815 N.E.2d at 565. We agree with the earlier decision of the Court of Appeals that a participant in horseplay is not entitled to worker's compensation because the horseplay is not for the benefit of the employer and therefore does not arise out of the employment, but an innocent victim of horseplay by others is entitled to worker's compensation benefits. Fields v. Cummins Employees Fed. Credit Union, 540 N.E.2d 631, 638 (Ind. Ct. App. 1989). The issue then is whether Farmer, not Swindel, was engaged in conduct outside his employment.

An injury "arises out of" employment when a causal nexus exists between the injury or death and the duties or services performed by the injured employee. March, 813 N.E.2d at 1165-66; Bertoch, 813 N.E.2d at 1161; Burke v. Wilfong, 638 N.E.2d 865, 869 (Ind. Ct. App. 1994). The causal relationship is established "when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it." Burke, 638 N.E.2d at 869. "Employment" means more than merely performing services directly related to the job for which the employee was hired, and includes activities "reasonably incidental to one's employment." Wine-Settergren v. Lamey, 716 N.E.2d 381, 384, 389 (Ind. 1999). Ordinary courtesies to fellow employees may not be required by the employer, but are nevertheless incidental to the employment. Id. Whether a risk or injury is incidental to employment is determined by the activity in which the employee was engaged when injured and its relationship to: 1) "his duties;" 2) "the reasonableness of employee's acts in relation to the sum total of conditions and circumstances constituting the work setting at the time of the injury;" and 3) "the knowledge and acquiescence of the employer in situations where acts incidental to employment are being done in violation of company rules." March, 813 N.E.2d at 1169 (citing Segally v. Ancerys, 486 N.E.2d 578, 581 (Ind. Ct. App. 1985)).

We believe Judge Vaidik in dissent correctly gave deference to the Board's finding that Farmer's acts were reasonable conduct in this work setting and did not provoke Swindel's attack. See DePuy, 815 N.E.2d at 567. Farmer's injuries were incurred while he was performing services for DePuy (i.e., walking towards the time clock to end his shift), and Swindel's loss of control and unprovoked attack does not change that. Accordingly, the incident was within the scope of employment as ordinary courtesies to a fellow employee, and Farmer's injuries "arose out of" his employment.

DePuy also argues that because Farmer dragged his time card across Swindel's midsection, Farmer's injuries were not "by accident." Whether an injury inflicted by a fellow employee is "by accident" turns on the intent of the injured employee, not that of the employee inflicting the harm. Tippmann v. Hensler, 716 N.E.2d 372 (Ind. 1999). As Tippmann put it, the issue is: "'Did the party who is advocating the applicability of the Act intend for harm to result from the actions that party undertook?' If so, then the injury did not occur 'by accident,' for that particular litigant." Id. at 376. The same injury intentionally inflicted by a co-worker can be both "by

4

accident" as far as the employer is concerned and not "by accident" if the fellow employee seeks to invoke tort immunity under the Act.  Id.  In this case, the Hearing Judge found that Farmer's actions were not unreasonable and did not provoke Swindel's attack, and the Board affirmed this finding.  Specifically, the Hearing Judge found Farmer "was injured in the course and scope of his employment when another employee, Wynn Swindel, assaulted [him]" and Farmer's "actions in greeting Wynn Swindel and touching him with his timecard did not constitute horseplay or provocation of Swindel's assault."  The only evidence of the reason for the incident was Farmer's report that another co-worker had asked Swindel why he had attacked Farmer and Swindel's reply was that he had had a fight with his wife and had taken it out on Farmer.  Farmer denied Swindel's statement as recorded in the Sheriff's report that Farmer had given Swindel a "titty twister" which provoked him to anger and retaliation.  DePuy did not offer the Sheriff's report or any evidence from Swindel or any other employee as to the reason for the attack.  The Hearing Judge is entitled to credit Farmer's testimony, and if so, to find as she did that Farmer, like the victim in Tippmann, did not intend for his action to cause harm to himself and did not provoke the ensuing injury.  In sum, because the incident was the product of no fault on the part of either Farmer or his employer, it occurred "by accident" as far as DePuy is concerned.

## II.      The Effect of a Civil Tort Recovery From a Fellow Employee

It is well settled that if the WCA applies to an injury, the rights and remedies granted to an employee by the WCA "exclude all other rights and remedies of such employee."  I.C. §§ 22-3-2-6, 22-3-6-1(e); Evans v. Yankeetown Dock Corp., 491 N.E.2d 969, 971 (Ind. 1986).  Courts have no jurisdiction to entertain common law claims against the employer or a fellow employee for accidental injuries arising out of and in the course of the victim's employment.  Knoy v. Cary, 813 N.E.2d 1170, 1171 (Ind. 2004).  "This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts."  6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 100.01 (Matthew Bender & Co., Inc. 2005); accord Williams v. Delta Steel Corp., 695 N.E.2d 633, 635 (Ind. Ct. App. 1998), trans. denied.

A. *The Statutory Provisions*

5

Although the WCA provides the exclusive remedy against the employer and fellow employees for accidental injuries, section 13 of the Act has a number of provisions that explicitly or by judicial construction allow an employee to sue a "third party." See I.C. § 22-3-2-13; Waldridge v. Futurex Indus., Inc., 714 N.E.2d 783, 785 (Ind. Ct. App. 1999), trans. denied. Section 13 defines a "third party" as a person who is not "the employer and not in the same employ." Thus, by its terms, section 13 does not apply to the civil suit between Farmer and Swindel. However, to understand the parties' arguments, and the actions of the Board, it is necessary to describe briefly both section 13 and the case law under that section.

The WCA addresses a number of issues that may arise in claims against a third party. All of these provisions are found among the nine unnumbered paragraphs of section 13 which address a number of other subjects as well. For convenience we will refer to these paragraphs as if they bore numbers. Paragraph 1 provides that if the injured employee gets a judgment or settles with a third party the liability of the employer to pay "further compensation" under the WCA terminates.[1]

Paragraph 1 includes an explicit obligation of the employee to reimburse the employer in the event of a settlement with a third party:

> [I]f the action against the other person [i.e. a "third party" tortfeasor] is brought by the injured employee . . . and . . . settlement is made with the other person, either with or without suit, then from the amount received by the employee . . . there shall be paid to the employer or the employer's compensation insurance carrier . . . the amount of compensation paid to the employee or dependents, plus the [expenses] . . . paid by the employer . . .

I.C. § 22-3-2-13. In Norris v. United States Fidelity and Guaranty Co., 436 N.E.2d 1191, 1194 (Ind. Ct. App. 1982), this right of the employer was held to be a lien, not a subrogation right, and therefore not subject to proration between amounts also covered by worker's compensation and those that are not. This right of the employer is, however, subject to the employer's reimbursing the employee for its "pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim." I.C. § 22-3-2-13 (paragraph 1).

---

[1] In all cases these descriptions are attempts to capture the substance of the statutory provisions, but do not include all caveats or details and cannot be taken as complete recitations of these provisions.

Notwithstanding the forgoing provisions governing settlements with third parties, if the injured employee receives a "final judgment" against the third party that is for less than the amount of the employer's liability under the WCA, then the injured employee may still collect worker's compensation benefits by "either collecting the judgment and repaying the employer [or employer's insurer] for compensation previously drawn, if any, . . . or . . . assigning all rights under the judgment to the employer [or employer's insurer]." I.C. § 22-3-2-13 (paragraph 3).

Paragraph 3 says that if an employee gets a final judgment "other than by agreement" for less than his worker's compensation benefits, the employee can assign that to the employer and proceed to collect benefits. This provision permits an employee who is not fully compensated by a third party judgment to obtain the remaining balance of his worker's compensation benefits.

B. *Case Law Involving Settlements with Third Parties*

The Court of Appeals has held that this provision of paragraph 3 does not permit an assignment and collection of benefits if the employee settles a tort claim "by agreement." McCammon v. Youngstown Sheet & Tube Co., 426 N.E.2d 1360, 1364 (Ind. Ct. App. 1981). More generally, there is substantial authority for the proposition that "if an employee settles a third-party claim without the employer's consent, the employee forfeits any right to future compensation." See 6 Larson, supra, § 116.07[2]. This is presumably based on the view that because the employer is entitled to be reimbursed from any third party award, the employer's consent is required for any settlement that would limit that amount. It is noteworthy, however, that the cases cited to support this proposition are sprinkled with "but see." Id. at § 116.07D[2].

Several Indiana cases also suggest that a settlement with a third party precludes worker's compensation benefits whether or not it is in an amount equal to or greater than the benefits.[2]

---

[2] In McCammon, a settlement with a third party was achieved after a temporary disability award had been paid. The employee subsequently sought permanent impairment and the Board found no evidence that there was permanent impairment, and the Court of Appeals agreed. However, the Court of Appeals also affirmed the Board's finding to discontinue compensation on the ground that section 13 terminates coverage in the event of a settlement of a third party claim. The Court of Appeals cited the provision that in the event of a settlement with a third party "the liability of the employer . . . to pay further compensation . . . shall thereupon terminate." Id. at 1364. This alternative and apparently unnecessary holding did not specifically address the effect of a settlement with a third party before compensation is awarded. The only case McCammon cited for this proposition was Koughn v. Utrad Industries, Inc., 150 Ind. App. 110, 275 N.E.2d 572 (1971). That case clearly held that a settlement with a third party terminated the employer's

These cases all addressed situations where either the employee settled with the third party after worker's compensation benefit had been paid or the settlement amount was greater than the worker's compensation benefits. No third party tortfeasor case has squarely addressed the situation we have before us where a tort claim was settled for less than the apparent worker's compensation benefits before the worker's compensation claim was resolved.

The third party tortfeasor cases all turn on the specific language of section 13, in particular the "further compensation . . . shall thereupon terminate" language of paragraph 1. They did not address the effect of paragraph 9 of section 13, which states, with exceptions not relevant here,[3] "[n]o release or settlement of claim for damages . . . shall be valid without the written consent" of the employer.

"[I]t is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may

---

liability for "further compensation." Although the facts of <u>Koughn</u> are not entirely clear, it is certain that the carrier was repaid in full. We assume, therefore that the amount of the settlement exceeded the amounts paid under the worker's compensation award.

Similarly, the courts have dealt with attempts to allocate third party settlements to damages other than those covered by worker's compensation. In <u>Carrier Agency, Inc. v. Top Quality Building Prod.</u>, 519 N.E.2d 739, 740 (Ind. Ct. App. 1988), <u>trans. denied</u>, an injured employee was awarded $129,680 in worker's compensation benefits from his employer. However, because of a dispute between the employer and the employer's insurance carrier the injured employee was not paid his benefit. Subsequently, the employer paid the employee $10,000 and assigned its rights against its carrier to the employee in consideration of the employee's covenant not to execute on the worker's compensation award. The injured employee and his wife then settled a civil claim against a third party for $18,000 without the consent of the employer or its carrier, and assigned the bulk of the settlement to the employee's wife's loss of consortium claim. The Court of Appeals held that this allocation attempt was ineffective to defeat the carrier's statutory lien. The ultimate issue in <u>Carrier Agency</u> was whether the employee's $18,000 settlement with a third party barred any further payments of the worker's compensation. The Court of Appeals stated:

> The law in Indiana is settled that where an action is brought by an injured employee against a third party tort-feasor and a settlement is made and a release executed, the liability of the employer, or the employer's compensation carrier, to pay further compensation terminates. Additionally, the employer is entitled to subrogation for the amounts paid, or is entitled to a lien on the judgment received by the employee against the third party tort-feasor.

<u>Id.</u> at 742. For this proposition, the Court of Appeals cited section 13 of the WCA and four earlier cases, one from this Court and three from the Court of Appeals, and held that the employee was barred from further pursuit of payment against the carrier for awarded benefits because of the settlement between the injured employee and the third party. <u>Id.</u> at 743.

[3] In <u>Koval v. Simon Telelect, Inc.</u>, 693 N.E.2d 1299, 1310 (Ind. 1998), we held that a court order specifically preserving an employer's, or employer's insurer's, right to bring a suit against the third party does not constitute "protect[ion] by court order."

be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation." Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005); accord Durham v. U-Haul Int'l., 745 N.E.2d 755, 759 (Ind. 2001) ("if a line of decisions of this Court has given a statute the same construction and the legislature has not sought to change the relevant parts of the legislation, the usual reasons supporting adherence to precedent are reinforced by the strong probability that the courts have correctly interpreted the will of the legislature."); Dep't of Revenue v. U.S. Steel Corp., 425 N.E.2d 659, 662 (Ind. Ct. App. 1981) ("When the court interprets a statute and the legislature fails to take action to change that interpretation, the legislature is presumed to have acquiesced in the court's interpretation."). The general rule that a third party settlement bars worker's compensation benefits has been recited in these other settlement contexts. We assume without deciding that DePuy is correct in claiming that this rule, announced over thirty years ago as a matter of statutory interpretation, remains the law as to claims against third parties. Whether that rule applies where the settlement is obtained before a worker's compensation award has been resolved, and is in an amount less than the anticipated worker's compensation benefit is an open question that we need not resolve here.[4]

---

[4] Recently, the Court of Appeals has backed away from the strict bar to worker's compensation after an injured employee has received some money from a third party. In Ansert Mechanical Contractors, Inc. v. Ansert, 690 N.E.2d 305 (Ind. Ct. App. 1997), trans. denied, an injured employee was offered $100,000 from a third party tortfeasor's insurance company. In an attempt to preserve its statutory subrogation right, the employer's worker's compensation insurance carrier collected that sum from the third party's liability insurer and then advanced the injured employee $100,000. The employee did not release his claim against the third party tortfeasor and did not enter into a written settlement agreement. The employer argued that this transaction constituted a "settlement" between the injured employee and the third party, and therefore the employee was barred from pursuing worker's compensation against the employer. The Court of Appeals disagreed: "the apparent purpose behind the termination provision of section thirteen is to prevent injured employees from settling with a third party, thereby cutting off the opportunity of a worker's compensation carrier to pursue the liable party to recover any benefits it has paid." Id. at 307. Because the employee was still pursuing a claim against the third party tortfeasor, and his acceptance of the $100,000 from the third party's liability insurer did not preclude the employer's worker's compensation insurance carrier from pursuing the third party tortfeasor in recovering any worker's compensation benefits paid to the employee, the Court of Appeals held that section 13 did not bar the employee from recovering worker's compensation benefits. Id.

In Calvary Temple Church, Inc. v. Paino, 555 N.E.2d 190 (Ind. Ct. App. 1990), the Worker's Compensation Board found no "final settlement agreement" had been reached between an injured employee and a third party where the employer and its carrier had not signed an agreement between the employee and third party in settlement of a civil suit. The carrier was therefore liable for future compensation benefits. The Court of Appeals noted that the Board was "technically correct," but found it unnecessary to rule on this issue. Id. at 193. Because the payment received from the third party was greater than

9

C.  *Intentional Torts by Co-Employees*

The WCA specifically extends the immunity provided by the exclusivity of remedies provision to those "in the same employ" as the injured employee when the injury occurred. Tippmann, 716 N.E.2d at 375.  This immunity applies only if the injury is "by accident."  The parties do not dispute that Farmer was injured by an intentional tort of a co-worker.  Accordingly, Farmer could pursue a civil tort claim against Swindel in civil court, and the exclusivity provisions of the WCA did not bar Farmer's civil action against Swindel.  The principal issue presented by this case is the extent to which the rules developed under the specific language of section 13 as to third party torts also apply to intentional torts by fellow employees.

The Court of Appeals applied section 13 to Farmer's settlement with Swindel, but held that by ordering Farmer to give DePuy the settlement sum, the Board ensured that Farmer could not receive double recovery.  DePuy, Inc., 815 N.E.2d at 563.  Thus, the Court of Appeals held that section 13 did not bar Farmer's worker's compensation claim.  Id.  We agree with this result. In summary, we conclude first that by its terms, section 13 does not apply to a claim against a fellow employee.  Second, the cases cited by the parties all address claims against third party tortfeasors, which are governed by section 13.  Third, to the extent case law supports the view that a settlement is an absolute bar to worker's compensation benefits, these decisions either addressed recoveries in excess of the worker's compensation benefits or settlements after the worker's compensation benefits were resolved, and none of these cases addressed the situation we have here, where the settlement is for less than the anticipated amount of the worker's compensation benefit which has yet to be resolved.  Fourth, although an absolute statutory bar is not applicable to a recovery against a fellow employee, equitable subrogation rights nevertheless give DePuy the right to offset any recovery from Swindel against its worker's compensation liability.  Fifth, if an employee settles without the approval of the employer (or its carrier) the employer (or its carrier) is free to challenge the amount received as inadequate.

As noted above, the parties agree that the several provisions found in section 13 of the WCA apply by their terms only to recoveries against third parties who are not "in the same employ."  DePuy argues that these provisions, as interpreted by the court decisions described above,

the worker's compensation previously awarded, the Board ordered the employee to reimburse the carrier, less the carrier's pro rata share of attorney's fees.  Id. at 194.

nevertheless apply to suits against co-workers for injuries caused by intentional torts. Specifically, DePuy argues that this Court in Tippmann incorporated the limitations and constraints of section 13 onto civil suits alleging an injury from an intentional tort by a coworker. Thus, DePuy argues that, though Swindel is not a "third party," the settlement agreement between Farmer and Swindel barred Farmer's worker's compensation claim and the Board did not have the authority to resurrect the claim even if it also required Farmer to give the settlement sum to DePuy.

In Tippmann we stated that allowing an employee to sue a co-employee for an intentional tort would not lead to double recovery "because the employer or its worker's compensation insurance carrier would have subrogation rights to the award under Ind. Code § 22-3-2-13." 716 N.E.2d at 380 (citations omitted). We adhere to this view, but section 13 is not the source of subrogation rights in a recovery by one employee for the intentional tort of another. Paragraph 1 of section 13 specifically limits its application to suits against "some other person than the employer and not in the same employ."

The result reached in Tippmann is produced by the common law even in the absence of the statutory right conferred by section 13. In the absence of a specific statutory provision, this subrogation right comes from the common law. Subrogation operates "in favor of persons who are legally obligated to pay for a loss caused by another's tort." Steury v. N. Ind. Pub. Serv. Co., Inc., 510 N.E.2d 213, 214 (Ind. Ct. App. 1987) (citing 73 Am. Jur. 2d Subrogation § 38 (1974); 83 C.J.S. Subrogation § 16 (1953)). Common law subrogation is "a doctrine of equity jurisprudence" that "arises by operation of law, that is to say it is created by the legal consequences of the acts and relationships of the parties, and thus is a legal fiction." 83 C.J.S. Subrogation §§ 2, 4 at 499-500, 504 (2000) (citations omitted); accord 73 Am. Jur. 2d Subrogation § 1 at 541 (West 2001). It is "designed to promote and to accomplish justice, and . . . compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." 83 C.J.S. Subrogation § 3 at 502-03. The main goals of common law subrogation is to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor. Bank of New York v. Nally, 820 N.E.2d 644, 653 (Ind. 2005); Erie Ins. Co. v. George, 681 N.E.2d 183, 186 (Ind. 1997); 73 Am. Jur. 2d Subrogation § 2 at 543. The Board's decision to allow Farmer to

11

continue his worker's compensation claim contingent upon his remitting the settlement sum to DePuy achieved these goals, and was a proper application of these common law principles.

The purpose of the WCA is "'to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public.'" Daugherty v. Industrial Contracting & Erecting, 802 N.E.2d 912, 919 (Ind. 2004) (citing Talas v. Correct Piping Co., Inc., 435 N.E.2d 22, 28 (Ind. 1982). Worker's compensation is for the benefit of the employee, and the Act should "be liberally construed . . . so as to not negate the Act's humane purposes." Frampton v. Cent. Ind. Gas Co., 260 Ind. 249, 251, 297 N.E.2d 425, 427 (1973). As Tippmann observed, in the absence of subrogation, the intentional tortfeasor could shift the cost of wrongdoing to industry and thus to the general public. We think that the Board's order conforms with and carries out this humane purpose of the WCA, and also prevents double recovery, the equitable result demanded by common law subrogation. However, one purpose of the WCA is to provide prompt compensation to an injured employee. Because DePuy had not yet begun payment of Farmer's award, the Board should have allowed Farmer to keep the settlement sum, and permitted DePuy a credit against any future compensation. A subrogee should reimburse the employee for its proportionate costs of any recovery from the fellow employee tortfeasor, just as the statute so provides as to "third parties."[5] And lastly, an injured employee who settles with a fellow employee without consent from the employer (or its carrier) leaves it open for the employer (or carrier) to challenge the adequacy of the settlement.[6]

---

[5] Paragraph 6 of section 13 allows the employee two years "after the cause of action accrues" to file a third party suit. That paragraph also provides that the employer (or its carrier) "may collect in their own name . . . compensation paid or payable to the injured employee." This provision does not mention attorney fees, but in Indiana State Highway Commission v. White, 259 Ind. 690, 693, 291 N.E.2d 550, 552 (1973), this Court stated "it is quite obvious that the employer or carrier would be required to pay for the legal services necessary to maintain its subrogation action, and could not deduct any part of the cost of those services from the compensation due a claimant." Similarly, if a subrogee has a common law subrogation right to all of or a portion of a settlement in a legal proceeding equitable principles demand that the subrogee pay its proportionate costs for any amount it recovers. 73 Am. Jur. 2d Subrogation at § 11; 83 C.J.S. Subrogation at § 6 (In general, subrogation should be applied in a manner that dictates equity, justice, and good conscience, as well as public policy.).

[6] See Liberty Mut. Ins. Co. v. Ameta & Co., 564 F.2d 1097, 1103 (4th Cir. 1977) (Employee was injured and received compensation benefits from his employer. Employee then settled with a third party for less than the compensation award. The court held that the employer's insurer was not bound by the release of liability between the third party and the employee because the insurer had neither consented to the settlement nor was a party to the civil action.); Dickerson v. Orange State Oil Co., 123 So. 2d 562, 572 (Fla. 1960) (The employee accepted a settlement with a third party tortfeasor without giving notice to his em-

### III. Statutory Award Increase

Farmer contends that he is entitled to an increased award pursuant to Indiana Code section 22-3-4-8(f), which provides: "An award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)." Thus, the statute explicitly requires the courts to increase the award by five percent if affirmed, and gives the courts discretion to increase the award an additional five percent. For the most part this discretion has been exercised to discipline frivolous or dilatory appeals. The standard for discretionary damage award increases on appeal generally was described in Orr v. Turco Manufacturing Company, Inc., 512 N.E.2d 151, 152 (Ind. 1987): "[i]n general, a discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." The Court of Appeals has since cited the standard described in Orr in exercising discretion under section 22-3-4-8(f). See, e.g., Manous v. Manousogianakis, 824 N.E.2d 756, 768 (Ind. Ct. App. 2005); Tanglewood Trace v. Long, 715 N.E.2d 410, 416 (Ind. Ct. App. 1999), trans. denied. On the other hand, the Court of Appeals has also cited "the extended period that [the employee] has been prevented from obtaining worker's compensation benefits" as a factor in increasing the award of the Board by the full ten percent. Graycor Indus. v. Metz, 806 N.E.2d 791, 801-02 (Ind. Ct. App. 2004).

Although the statute is silent on the point, the Court of Appeals has long held that a worker's compensation award may include interest. See Calvary Temple Church, Inc. v. Paino, 555 N.E.2d 190, 195 (Ind. Ct. App. 1990). Farmer's did not. Farmer's injuries were incurred over a decade ago, and he has yet to receive any worker's compensation benefit. This delay is nearly twice the time consumed by most cases from injury to final determination on appeal. See, e.g., Dial X-Automated Equip. v. Caskey, 826 N.E.2d 642 (Ind. 2005) (5 years); Manous, 824

---

ployer or obtaining the employer's consent. The court held that the settlement did not bar the insurer's subsequent action against the third party but did limit recovery in the second action to the extent of the insurer-subrogee's amount paid in compensation. The court stated that because the third party had knowledge that the employee was injured in the course of employment, the third party is "charged with the knowledge of the law providing that the employer or his insurance carrier is subrogated to the rights of the employee and the third party is cast with statutory notice of the employer's subrogation interests."); Henning v. Wineman, 306 N.W.2d 550, 553-54 (Minn. 1981) (an employee may settle without the employer's or carrier's consent, but such a settlement does not affect the employer's or carrier's rights against the third party).

N.E.2d 756 (5 ½ years); <u>Graycor</u>, 806 N.E.2d 791 (4 ½ years); <u>Tanglewood</u>, 715 N.E.2d 410 (6 years).  As Farmer points out, the extra five percent is far less than the interest on the award over that period of time.  We agree that the issues raised by DePuy are not frivolous, and "disingenuous" defenses are usually the basis of an enhanced award.  However, we think a delay of over a decade warrants an additional five percent even if, as here, the employer in good faith raises fairly debatable issues.

## Conclusion

The compensation awarded to Farmer by the Worker's Compensation Board is affirmed and hereby increased by ten percent.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.